**MCDERMOTT WILL & SCHULTE LLP**
Charles R. Gibbs (TX Bar No. 7846300)
Marcus A. Helt (TX Bar No. 24052187)
Grayson Williams (TX Bar No. 24124561)
2801 North Harwood Street
Suite 2600
Dallas, Texas 75201
Telephone: (214) 295-8000
E-mail: crgibbs@mwe.com
        mhelt@mwe.com
        gwilliams@mwe.com

**MCDERMOTT WILL & SCHULTE LLP**
Darren Azman (admitted *pro hac vice*)
Jared M. Gerber (*pro hac vice* forthcoming)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
E-mail: dazman@mwe.com
            jmgerber@mwe.com

**MCDERMOTT WILL & SCHULTE LLP**
Julia M. Beskin (admitted *pro hac vice*)
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Email: julia.beskin@srz.com

*Counsel to the Chapter 7 Trustee*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| TRICOLOR HOLDINGS, LLC, *et al.*, | Case No. 25-33487 (MVL) |
| Debtors. [1] | (Jointly Administered) |
| ANNE ELIZABETH BURNS, as Chapter 7 Trustee for Tricolor Holdings, LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adversary No. 3:25-ap-03126 |
| DANIEL CHU, JEROME KOLLAR, DAVID GOODGAME, and AMERYN SEIBOLD | |
| Defendants. | |

---

[1] The Debtors in these Chapter 7 cases are as follows: Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home Loans LLC d/b/a Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group,

## DECLARATION OF ANNE ELIZABETH BURNS

I, Anne Elizabeth Burns, hereby declare the following and hereby certify, under penalty of perjury pursuant to the laws of the United States and the State of Texas, that it is true and correct to the best of my knowledge and belief:

1. I am over eighteen (18) years of age, under no mental or legal disability, and am competent to testify to the matters stated herein. I am an attorney at law admitted to practice before the United States District Courts for the Northern, Eastern, and Southern Districts of Texas. I am a shareholder of the law firm of Cavazos Hendricks Poirot, P.C., which maintains offices at, among other places, 900 Jackson Street, Dallas, Texas 75202-4425.

2. I am the duly appointed Chapter 7 Trustee ("**Trustee**" or "**Plaintiff**") of Tricolor Holdings, LLC (the "**Debtor**") in the above-referenced Chapter 7 bankruptcy case (the "**Bankruptcy Case**") and plaintiff in the above-referenced Adversary Proceeding (the "**Adversary Proceeding**").

3. I am expecting this Declaration in support of the *Trustee's Emergency Motion for a Temporary Restraining Order and for a Preliminary Injunction Against Daniel Chu.*

4. The facts set forth in this Affidavit are based upon my personal knowledge, discussions with my counsel, and records that I or my counsel, acting under my supervision and direction, reviewed.

### A.  Tricolor's Business and Corporate Organization.

5. Tricolor Holdings is a limited liability company founded in 2015 and organized under the laws of the State of Delaware, with its principal place of business at 6021 Connection Drive, 4th Floor, Irving, Texas 75039. It is the parent entity of the other Debtors.

---

LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, TAG Asset Funding, LLC, and Apoyo Financial, LLC. (collectively, "**Tricolor**").

2

6. Tricolor was a "buy here, pay here" subprime auto finance company, which meant that it was both an automobile dealer and finance company, offering in-house financing directly to its customers purchasing vehicles. Tricolor's origination of auto loans to the purchasers of the vehicles it sold (represented on Tricolor's books as finance receivables) was financed from warehouse line of credit with the Lenders (as defined below).

7. Tricolor's warehouse lending process was set out in its credit agreements with lenders, including the Credit Agreement dated November 13, 2020 between Tricolor Funding SPV 4 (borrower), Tricolor Auto Acceptance, LLC (servicer), lenders (from time to time), agents (from time to time), JPMorgan Chase Bank, N.A. (as the administrative agent) ("**JPM**"), and Vervent Inc. (as the backup servicer), and Wilmington Trust, N.A. (as the collateral custodian and account bank) (the "**Credit Agreement**"). These lending institutions were JPM, Fifth Third Bank, LibreMax Capital, and Origin Bank (the "**Lenders**").

8. Tricolor Funding SPV 4, by the Credit Agreement's terms, was obligated to not exceed a collateralization rate of 80%. This means that the Lenders would only advance warehouse loans to Tricolor at amounts less than or equal to 80% of the value of Tricolor's recorded finance receivables (*i.e.*, its auto loans to Tricolor customers). This collateralization rate obligation was intended to protect the Lenders from a Tricolor default by limiting the amount that Tricolor could be loaned, as the finance receivables from auto loans served as collateral for the warehouse loans.

**B. Chu's Control at Tricolor and Orchestration of the Fraud.**

9. Chu was at all relevant times Chief Executive Officer and President of Tricolor Holdings, as well as a Manager of Tricolor Holdings. Chu also served as the Chief Executive Officer and President—as well as a Manager—of each of the other Debtors.

10.     As set forth in the Adversary Complaint, from 2018 through 2025, Chu perpetuated a brazen double-pledging scheme to defraud Tricolor, its lenders, and other investors. In or about 2018, when Chu instructed Jerome Kollar ("**Kollar**") to pledge past-due loans that Tricolor had already charged-off as losses. To pay back the loans it secured from Lenders through the collateralized car loans, Tricolor used funds from one Lender to pay back another.

11.     On December 16, 2025, the Department of Justice ("**DOJ**") unsealed its indictment charging Chu and David Goodgame with charges including wire fraud, bank fraud, and conspiracy. As stated in more detail in the indictment, the DOJ alleges that from in or about 2018 through in or about 2025 that Chu, together with the other Defendants, conspired to defraud the lenders and asset-backed securities investors of Tricolor Holdings, LLC and its affiliates and operated Tricolor through systematic fraud.  Over time, this series of fraudulent schemes had a profound effect on Tricolor, which obtained hundreds of millions of dollars in cash advances; on Chu, who used a portion of the funds to enrich himself; and on Tricolor's lenders, who extended billions in loans based on fabricated data and false statements.

12.     Attached as **Exhibit 1** hereto is a true and correct copy of the Department of Justice Indictment of Daniel Chu and David Goodgame, United States v. Daniel Chu and David Goodgame, 25 C.R. 579 (S.D.N.Y. filed December 17, 2025).

13.     Unable to maintain its access to loans, and unable to sustain its business without substantial cash, Tricolor filed for Chapter 7 bankruptcy on September 10, 2025. By that time, the company's largest lenders had advanced and were owed more than $900 million as a result of the fraudulent double-pledging and collateral manipulation schemes that Chu had orchestrated.

4

**C.      Chu Used His Power Over the Company to Secure Outsized Compensation.**

14.      Beginning in 2022 and through the final weeks before bankruptcy, Chu demanded that the company pay him outsized bonuses premised on the company's financial performance—a performance that was false and the product of Chu's own fraud.

15.      In or around January 2022, Chu demanded a $1.5 million bonus for 2021 from Tricolor's Board of Managers, because of the company's financial performance. Dann Adams (chair of the Compensation Committee), expressed skepticism of that amount of compensation worrying about the optics of a company whose brand image has been focused on high social impact paying its CEO a compensation package, which would put Chu in at least the top 10th percentile for *public* companies, and substantially higher than that of the average private company CEO. In response, Chu prepared a fourteen-slide presentation for the Board's meeting on March 17, 2023, claiming Tricolor's performance has been superior to its competitors due in large part to his efforts, and that the Compensation Committee process related to his bonus has been "grossly mismanaged."

16.      Attached as **Exhibit 2** hereto is a true and correct copy of an email from Daniel Chu to Christian Donohue and Derrick Weatherspoon, dated March 17, 2023, with the subject "Christian, Derrick & Daniel," attaching Chu Comp Discussion 03.17.2023.pptx.

17.      Attached as **Exhibit 3** hereto is a true and correct copy of an email from Christian Donohue to Daniel Chu, copying Derrick Weatherspoon, dated March 25, 2023, with the subject "Christian, Derrick & Daniel."

18.      In that presentation, Chu demanded, among other things: (1) a reallocation to cash compensation for 2022 and increase his bonus by $3 million, to reach a total of $5 million in 2022; (2) a new equity plan in 2023 with structure; (3) a base pay of $1,500,000 and bonus of $750,000

in 2023; and (4) a three-year severance package of $1,000,000 per year upon departure for any reason.

19. The Board approved, among other things, (1) a one-time grant of Restricted Stock Units valued at $1,500,000 as compensation for 2022 in lieu of a cash bonus, and (2) a base salary of $750,000 and a cash bonus of $750,000 to $1,500,000 (maximum) for 2023.

20. Later, in 2025, Tricolor paid Chu a bonus of $15 million for contributing to (what appeared to be) several years of resounding success at Tricolor which was based on the fabricated loans. As Tricolor approached collapse, and after Chu observed that the company was "definitely insolvent," he directed Kollar to pay him the final installments of a $15 million bonus. On or about August 19 and 20, 2025, Chu received two payments from Tricolor totaling $6.25 million. Chu used some of this money to purchase a multimillion-dollar property in Beverly Hills, California on or about August 27, 2025.

**D.     Chu Spent Corporate Funds on Lavish Personal Expenses.**

21. In May 2023, the Board questioned millions of dollars' worth of personal purchases charged to Chu's company American Express credit card. Chu also used his company American Express credit card to purchase light fixtures from Lumens.com, disguised as a PayPal payment and designated as "Office Supplies," on December 2, 2022 for $5,673.10. Chu purchased these light fixtures to install in the property at The Four Seasons Residences, The Surf Club, 9001 Collins Ave #S-201, Miami Beach, FL 33154, and upon information and belief, the fixtures were installed in the Property.

22. On May 9, 2023, Chu emailed Tricolor's counsel at the law firm Reed Smith regarding the ongoing formal audit of his expenses, copying Board audit committee member Beth Brooke, attempting to pass off his personal expenses as necessary business expenses. Chu

attempted to justify (among other things) over $422,000 in travel expenses by explaining that "[a]ll of this require travel which at my age is candidly, not generally desirable. So when I do travel, I choose to travel with my immediate family (We have a 2 year old) so that we're together."

23.     Attached as **Exhibit 4** hereto is a true and correct copy of an email from Daniel Chu to Rizwan Qureshi, copying Beth Brooke, Courtney Fisher, and Rizwan Qureshi, dated May 9, 2023, with the subject "Confidential."

24.     On May 11, 2023, Board audit committee member Beth Brooke emailed Reed Smith and Christian Donahue Kathryn Petralia, and Dick Anderson, the members on the audit committee, to express concern about the compensation bonus for Chu in 2021 and 2022, as well as the personal American Express expenses. Brooke questioned who authorized an advance of $400,000 to Chu, considering that the Board had instructed the compensation committee to "hold up on finalizing" his compensation and bonus. Brooke closed her email with a prescient reflection: "If this is all because what [Chu] says, people do, with or without proper processes and approvals. If that is the case, [the auditor] is going to question everything. Rightfully so."

**E.     Chu Coerces the Board to End its Investigation into Chu's Misuse of Company Funds.**

25.     On May 31, 2023, to coerce the Board into ending its investigation into his improper use of his corporate card for personal expenses, Chu submitted a letter of resignation. Chu's power play worked, as the Board ultimately agreed to resolve its investigation into his personal expenses on favorable terms in order to keep Chu at the company given their understanding that the Company achieved significant success under Chu that was, in reality, a result of fraud. The Board agreed that Chu would only need to repay Tricolor $2,141,556 of the millions of dollars of personal expenses he attempted to pass off as business expenses.

7

26.     Pursuant to the Fifth Amended and Restated Limited Liability Agreement of Tricolor Holdings LLC, holders of "at least a majority of the total Percentage Interests" in Tricolor Holdings LLC could remove and replace a Manager in the Board, with the restriction that: (1) two Managers who are to be appointed by members holding a majority of "senior preferred" shares of Tricolor Holdings, (2) one Manager is to be appointed by Ganas Investors, LLC, and (3) one of the Managers appointed by the majority of the Percentage Interests must be someone who is not employed by or consultants to the Company or Ganas Investors LLC (or any of their affiliates). Thus, with respect to most Members of the Board, Chu had an unfettered ability to shape the Board, as Ganas Investors, LLC held 75% of the Percentage Interest in Tricolor Holdings LLC. As Chu, in turn, was the sole Manager of Ganas Investors, LLC, and was empowered by Ganas Investors, LLC's limited liability agreement to have sole decision-making authority, this meant effectively that Chu had the sole ability to appoint and remove Tricolor Holdings Board members.

27.     Attached as **Exhibit 5** hereto is a true and correct copy of the Credit Agreement dated November 13, 2020, between Tricolor Funding SPV 4 LLC (borrower), Tricolor Auto Acceptance, LLC (servicer), lenders (from time to time), agents (from time to time), JPMorgan Chase Bank, N.A. (as the administrative agent), and Vervent Inc. (as the backup servicer), and Wilmington Trust, N.A. (as the collateral custodian and account bank).

28.     Exercising this power, in retaliation for Brooke questioning his personal spending of company funds, Chu executed a Consent on behalf of Ganas Investors, LLC on September 17, 2023, removing Brooke from the Tricolor Board of Managers. In her place, Chu appointed Andrew DeLuca, Tricolor's General Counsel, to the Board.

29.     On December 27, 2023, just days before the next Board meeting where Board members would vote on Chu's compensation package, Chu executed two more consents on behalf

8

of Ganas Investors, LLC, removing Antonio Garza and Dann Adams, the only two Board members on the Compensation Committee, from the Board effective immediately.

30. With the Board members most willing to check Chu's economic impulses removed from the Board, and having wiped out the entire Compensation Committee, Chu took the opportunity to squeeze even more value from the Board.

31. On January 3, 2024, the Board held a special meeting to vote on Chu's 2023 and 2024 compensation. The Board approved his 2023 salary of $1.5 million and a 2023 bonus of $1.5 million. The Board also approved a 2024 salary of $1.5 million. In a further boon to Chu, the Board voted to reduce the balance of Chu's promissory note to repay Tricolor for his personal expenses on his corporate American Express credit card from $2,141,556 to $1,443,057.

32. In 2025, Chu once more decided that $3,000,000 in compensation was not enough. On January 24, 2025, Chu presented a proposal, which argued that he was entitled to a "true-up" of at least $13 million, to compensate him for Tricolor's growth between 2018 and 2025.

33. On February 12, 2025, the Board held a meeting to discuss compensation for Chu in 2025 and approved a base salary of $2,000,000 and a bonus of $2,000,000. The Board also approved a one-time grant of profit interest in Tricolor to vest over a four-year period. Finally, the Board resolved to pay Chu a one-time payment of $15,000,000, to be offset by the $1,443,057 owed by Chu via Promissory Note to compensate for some of Chu's personal American Express purchases. On February 12, 2025, the Board held a meeting to discuss Chu's 2025 compensation. The Board did not retain a compensation consultant or negotiate with Chu, but instead acceded to Chu's demand for a base salary of $2 million and a bonus of $2 million; a one-time grant of profit interest in Tricolor to vest over a four-year period; **and a one-time payment of $15,000,000**, offset

9

by the $1,443,057 owed by Chu via Promissory Note to compensate for some of Chu's personal American Express purchases.

34.      From 2023 to the time of Tricolor's bankruptcy filing, Chu squeezed as much as he could out of Tricolor by misrepresenting Tricolor's financial condition and unilaterally removing Board members that questioned him. In 2025 alone, Chu received over $17,000,000 in compensation.

**F.      Investigation Reveals Millions Paid to Chu in the Lead-up to the Bankruptcy.**

35.      In the year leading up to the bankruptcy, Tricolor made payments to Chu totaling $29,605,737. Of that total, **$13,464,025 was paid out to Chu just over the ninety days leading up to the bankruptcy**. This $29.6 million included $2 million paid on February 28, 2025. It also comprised the aforementioned special bonus of $15 million paid to Chu less the $1,443,057 offset, which was paid to him in four installments: $500,000 paid on January 28, 2025; $1,500,000 paid on February 10, 2025; $4,000,000 paid on March 6, 2025; $500,000 paid on May 21, 2025; and $5,556,943 paid on June 11, 2025. Notably, these payments were all made on the false understanding of Tricolor's performance given Defendants' fraud.

36.      When Tricolor paid over $29,000,000 to Chu in the year leading up to the bankruptcy, and especially when it paid over $13,000,000 of that amount in the ninety days leading up to the bankruptcy, these payments substantially diminished the amount of money Tricolor had remaining to pay its creditors.

37.      Ultimately, Tricolor's Board requested on September 5, 2025 that Chu return the $15 million special bonus that was paid to him in a letter sent by Tricolor's counsel. To date, Chu has not made this repayment nor has he indicated that he intends to do so.

10

38.     Attached as **Exhibit 6** hereto is a true and correct copy of the September 5, 2025 letter regarding "Demand for Immediate Repayment" sent to Daniel Chu by Tricolor's counsel, Sidley Austin LLP.

**G.     Chu Purchased Assets Using His Usurped Tricolor Funds.**

39.     Chu used the funds he usurped from Tricolor to fuel his lavish lifestyle by purchasing multiple homes during his tenure as Tricolor's CEO, and maintaining multiple other properties at the same time.

40.     In 2022, Chu purchased a property at The Four Seasons Residences, The Surf Club, 9001 Collins Ave #S-201, Miami Beach, FL 33154 for approximately $18,000,000. In or around January 2022, just days before signing a contract to pay $1.75 million deposit for the Miami property, Chu demanded a $1.5 million bonus from Tricolor's Board of Managers. Realizing that increased compensation would not come soon enough to pay that deposit, Chu used his influence and control over the staff and financial functions of Tricolor to cause Tricolor to make several multi-million dollar transfers to his personal bank account. Chu attempted to whitewash these transfers with a contrived narrative about a future share redemption. On January 27, 2022, Chu caused Tricolor to transfer $2,000,000 to his account purportedly as an advance on share redemption, Chu caused another transfer of $1,000,000 to his account at Origin Bank in March 2022 and $7,000,000 on April 15, 2022. On May 27, 2022, days before closing on the Miami property, Chu caused Tricolor to transfer $3,304,361 to his Origin Bank account, which he attributed to repayment of a purported loan he documented between him and Tricolor. On May 31, 2022, Chu signed closing documents for the property. That same day Chu caused Tricolor transfer $1 million which he attributed to a repayment of a purported loan he documented between him

11

and Tricolor. That same day, Chu paid $1,048,232.18 to purchase the property from the very same Origin Bank account.

41.     In March 2023, the same month that the Board approved Chu's increased 2023 compensation package, he purchased a property at 4208 Beverly Drive, Highland Park, TX 75205 with a tax assessment of $4,599,440 in 2023.

42.     In December 2024, Chu purchased property at 4544 Westway Ave, Highland Park, TX 75205 with a 2024 tax assessment of $2,063,260.

43.     On February 18, 2025—just days after his $15,000,000 special bonus was approved—Chu executed a purchase agreement for a ski chalet at 115 W. Bleeker Street, Aspen, CO 81611, for approximately $25,000,000.

44.     On August 29, 2025—just days before Tricolor's bankruptcy—a limited liability company operated by Chu called Chu Family Investments LLC purchased the property at 1612 Gilcrest Drive, Beverly Hills, CA 90210, for $2,650,000, with Origin Bank financing a $2.12 million mortgage. Upon information and belief, the remaining $530,000 came from the Usurped Funds.

45.     On June 12, 2025, Chu purchased, via a holding entity, 1431 Cobb Parkway South, Marietta, Georgia 30067, and, shortly thereafter, on June 26, 2025, sold the property for more than $7,000,000.

**H.     Chu's Alienation of Assets from Potential Judgment Creditors.**

46.     Beginning in July 2025, as it became clear that the fraud at Tricolor was unsustainable and about to be revealed, Chu began alienating his assets to protect against Tricolor's creditors. For example, on August 21, 2025 JPM emailed Chu and Kollar following up on a call with a list of follow-up questions regarding "double pledge[d]" loans and Tricolor financials. Then

12

on August 26, 2025, Chu updated the Board of Directors of Tricolor Holdings "as to developments brough to his attention from JPMorgan regarding potential issues related to securitized loans and the Company's warehouse facility." Notably, on August 29, 2025—just days before Tricolor's bankruptcy—Chu purchased the property at 1612 Gilcrest Drive, Beverly Hills, CA 90210, for $2,650,000 through a limited liability company.

47.     Attached **as Exhibit 7** hereto is a true and correct copy of the August 22, 2025 email thread between Jerry Kollar and Brian Honda at JPM.

48.     Attached **as Exhibit 8** hereto is a true and correct copy of the August 26, 2025 Minutes of a Regular Board Meeting of the Board of Directors of Tricolor Holdings LLC.

49.     On July 10, 2025, Chu listed for sale his property located at 4544 Westway Ave., Highland Park, TX 75205 for $2,099,999. The property remains listed for sale as of this filing, and his daughter Katie Chu is the real estate agent for this property. The Trustee recorded a Notice of Lis Pendens with respect to this property on December 24, 2025.

50.     On August 29, 2025—just days before Tricolor's bankruptcy—a limited liability company operated by Chu called Chu Family Investments LLC purchased a property at 1612 Gilcrest Drive, Beverly Hills, CA 90210, for $2,650,000, with Origin Bank financing $2.12 million of the purchase. Upon information and belief, the remaining $530,000 came from funds Chu had defrauded from the company, and this property was purchased through an LLC—even though all of Chu's other real estate purchases were made under his own name—in an attempt to shield it from any personal liability of Chu. The Trustee recorded a Notice of Lis Pendens with respect to this property on January 7, 2026.

51.     On September 9, 2025, Chu listed for sale his property located at 4208 Beverly Drive, Highland Park, TX 75205, for $10,990,000.  The property is in contract for sale to a buyer

13

for $7,700,000, with a sale set to close on or before December 30, 2025. On December 24, 2026, the Trustee recorded a Notice of Lis Pendens with respect to this property.

52. On September 15, 2025, Chu received an email from a law firm specializing in asset protection at his Tricolor email address sending a flow chart for a Family Limited Partnership to own investment assets. On September 16, 2025, Chu instructed the law firm to communicate through his Gmail email address (tricolor@gmail.com).

53. On September 17, 2025, Chu sent an email to himself at tricolor@gmail.com, including a link to an article from law firm Alper Law titled "Florida Homestead Law Guide," which "protects a Florida resident's primary home from judgment creditors."

54. Attached as **Exhibit 9** hereto is a true and correct copy of an email from Daniel Chu to tricolorchu@gmail.com, dated September 17, 2025, with the subject "Florida Homestead Law Guide – Alper Law."

55. On September 18, 2025, Chu listed for sale his property located at The Four Seasons Residences, The Surf Club, 9001 Collins Ave #S-201, Miami Beach, FL 33154 for $24,900,000. The property remains for sale as of this filing. The Trustee recorded a Notice of Lis Pendens with respect to this property on January 5, 2026.

56. On September 24, 2025, Chu executed a Termination and Release Agreement with Elephant Aspen Residences Inc., terminating the purchase of White Elephant Aspen Chalets Unit No. 3, located at 115 W. Bleeker Street, Aspen, CO 81611. The seller retained Chu's earnest money deposit of $1,750,000 and returned to Chu the remainder of the $25,000,000 purchase price.

57. Most recently, in December 2025, Chu called former Board member Richard Anderson requesting to sell his custom Land Rover Defender estimated to be worth around

14

$100,000. Despite Anderson expressly disclaiming any desire to purchase the vehicle, Chu shipped the vehicle to Anderson's home.

## I.     The Trustee Brings the Adversary Proceeding.

58.     On December 19, 2025, the Trustee initiated the Adversary Proceeding seeking judgment against the Defendants for (1) fraud, (2) breach of the fiduciary duty of care, (3) breach of the fiduciary duty of loyalty, (4) breach of the Fifth Amended and Restated Limited Liability Agreement, (5) breach of the implied duty of good faith and fair dealing, (6) turnover of estate property, (7) avoidance of preferential transfers, (8) actual fraudulent transfer, (9) constructive fraudulent transfer, (10) civil conspiracy, (11) unjust enrichment, (12) constructive trust, and (13) an accounting, and awarding the Trustee her reasonable costs and attorney's fees, and granting the Trustee such other and further relief that the Court deems just and proper.

59.     The Trustee's investigation into the full scope of Chu's fraud and usurpation of company funds remains ongoing.

60.     Given Chu's conduct to date, without Court intervention, he is likely to further attempt to hide assets rightfully belonging to the Estate. Accordingly, time is of the essence and the Trustee is filing a motion to expedite concurrently with this Motion.

DECLARED under penalty of perjury this 9th day of January, 2026.

_____
ANNE ELIZABETH BURNS,
CHAPTER 7 TRUSTEE