**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| TRICOLOR HOLDINGS, LLC, et al., | Case No. 25-33487 (MVL) |
| Debtors.[1] | (Jointly Administered) |
| ANNE ELIZABETH BURNS, as Chapter 7 Trustee for Tricolor Holdings, LLC, *et al.*, | |
| Plaintiffs, | Adversary No. 3:25-ap-03126 |
| v. | |
| DANIEL CHU, JEROME KOLLAR, DAVID GOODGAME, and AMERYN SEIBOLD | |
| Defendants. | |

**THE UNITED STATES OF AMERICA'S**
**BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE AND STAY DISCOVERY**

---

[1] The Debtors in these Chapter 7 cases are as follows: Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home Loans LLC d/b/a Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, TAG Asset Funding, LLC, and Apoyo Financial, LLC. (collectively, "Tricolor").

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 3

   I.     THE CRIMINAL CASE ................................................................................................ 3

   II.    THE ADVERSARY PROCEEDING ........................................................................... 4

ARGUMENT ............................................................................................................................. 6

   I.     THE GOVERNMENT IS ENTITLED TO INTERVENE ............................................ 6

   II.    DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF THE CRIMINAL
   CASE . ............................................................................................................................. 7

       A.   Applicable Law ........................................................................................................ 7
       B.   Application of the Stay Factors ............................................................................... 8

          1.   *Substantial Overlap Exists* ........................................................................... 8
          2.   *The Criminal Case is Proceeding Expeditiously* .......................................... 9
          3.   *The Trustee's Interests Do Not Outweigh the Need for a Stay* ................................. 10
          4.   *The Defendants' Interests Support a Stay* .................................................... 10
          5.   *Judicial Economy Favors a Stay* .................................................................. 11
          6.   *The Public Interest Strongly Supports a Stay* .............................................. 11

CONCLUSION ........................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Alcala v. Texas Webb Cnty.*,
    625 F. Supp. 2d 391 (S.D. Tex. 2009) ................................................................................. 7, 8

*Bd. of Governors v. Pharaon*,
    140 F.R.D. 634 (S.D.N.Y. 1991) ........................................................................................ 12

*Bureerong v. Uvawas*,
    167 F.R.D. 83 (C.D. Cal. 1996) ............................................................................................ 6

*DeLeon v. City of Corpus Christi,*
    488 F.3d 649 (5th Cir. 2007) ................................................................................................. 7

*Dominguez v. Hartford Fin. Serv.Group Inc.*,
    530 F. Supp.2d 902 (S.D. TX 2008) ............................................................................. 6, 8, 9

*Heller Healthcare Fin., Inc. v. Boyes*,
    No. Civ.A. 300CV1335D, 2002 WL 1558337 (N.D. Tex. July 15, 2002) ............................. 8

*In re Marceca*,
    131 B.R. 774 (Bankr. S.D.N.Y. 1991) ................................................................................... 8

*In re Ramu Corp.,*
    903 F.2d 312 (5th Cir.1990) ....................................................................................... 6, 7, 13

*Landis v. North American Co.*,
    299 U.S. 248 (1936) ............................................................................................................... 7

*Mayo v. Tri-Bell Indus.*,
    787 F.2d 1007 (5th Cir. 1986) ............................................................................................... 7

*In re SK Foods, L.P.*,
    2010 U.S. Dist. LEXIS 136188 (E.D. Cal. Dec. 9, 2010) ...................................................... 7

*In re Zinnel*,
    2013 U.S. Dist. LEXIS 46114 (E.D. Cal. March 28, 2013) .................................................... 7

*S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07 Civ.,
    1188, 2008 WL 866065 (N.D. Tex. Mar. 17, 2008) .............................................................. 8

*SEC v. Beacon Hill Asset Mgmt. LLC*,
    2003 WL 554618 (S.D.N.Y. Feb. 27, 2003) ........................................................................ 12

*SEC v. Calabrigo*,
 No. 22 Civ. 3096 (LJL), 2022 WL 4752427 (S.D.N.Y. Sept. 30, 2022) ................................. 12

*SEC v. Chestman*,
 861 F.2d 49 (2d Cir. 1988) ........................................................................................................ 6

*SEC v. Dresser Industries, Inc.*,
 628 F.2d 1368 (D.C. Cir. 1980) ................................................................................................ 7

*SEC v. First Fin. Grp. of Tex., Inc.*,
 659 F.2d 660 (5th Cir. 1981) .................................................................................................... 7

*SEC v. Nicholas*,
 569 F. Supp. 2d 1065 (C.D. Cal. 2008) .................................................................................. 12

*SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*,
 No. 11 Civ. 6500 (RA), 2012 WL 5505738 (S.D.N.Y. Nov. 9, 2012) .................................... 11

*SEC v. Shkreli*,
 15 Civ. 7175 (KAM), 2016 WL 1122029 (E.D.N.Y. Mar. 22, 2016) ....................................... 9

*State Farm Lloyds v. Wood*,
 No. 06 Civ. 503, 2006 WL 3691115 (S.D. Tex. Dec. 12, 2006) .............................................. 8

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
 886 F. Supp. 1134 (S.D.N.Y. 1995) .......................................................................................... 8

*Twenty First Century Corp. v. LaBianca*,
 801 F. Supp. 1007 (E.D.N.Y. 1992) .......................................................................................... 6

*United States v. Kordel*,
 397 U.S. 1 (1970) ...................................................................................................................... 7

*United States v. Little Al*,
 712 F.2d 133 (5th Cir. 1983) .................................................................................................... 7

*United States v. McCarthy*,
 292 F. Supp. 937 (2d Cir. 1968) ............................................................................................. 12

*United States v. Percevault*,
 490 F.2d 126 (2d Cir. 1974) .................................................................................................... 11

*Volmar Distribs., Inc. v. New York Post Co.*,
 152 F.R.D. 36 (S.D.N.Y. 1993) ................................................................................................. 8

iv

Statutes

18 U.S.C. § 225...................................................................................................................... 3
18 U.S.C. § 1343.................................................................................................................... 3
18 U.S.C. § 1344.................................................................................................................... 3
18 U.S.C. § 1349.................................................................................................................... 3
18 U.S.C. § 3500.............................................................................................................. 11, 12

Rules

Federal Rule of Civil Procedure 24(a)(2) ..................................................................... 5
Federal Rule of Bankruptcy Procedure 7024 …………………………………………… 5
Federal Rule of Criminal Procedure 16(b) …………………………………… ……… 7

## PRELIMINARY STATEMENT

The United States of America (the "Government"), moves to intervene in the above-captioned adversary proceeding to stay all discovery, including depositions and witness testimony, pending resolution of the parallel criminal case, *United States* v. *Daniel Chu & David Goodgame*, 25 Cr. 579 (PKC) (S.D.N.Y.). The Court should also impose an immediate administrative stay to preserve the status quo while this motion is pending.

The adversary proceeding and the criminal case arise from the same alleged fraud scheme at Tricolor Holdings, LLC, the Debtor. Chapter 7 Trustee Anne Elizabeth Burns brought claims against defendants Daniel Chu, David Goodgame, Jerome Kollar, and Ameryn Seibold—the same individuals charged or cooperating in the criminal prosecution. The Trustee does not oppose the Government's intervention or its motion to stay discovery in the adversary proceeding until after the criminal trial has concluded, subject to the caveats set forth below.[2] Three defendants—Goodgame, Kollar, and Seibold—also consent to a full stay. Chu has indicated that he is likely to consent to the Government's intervention and stay of discovery, subject to the caveats and objections set forth below and is thus substantially agreed upon by the parties.[3]   A certificate of conference as required by LBR 7007-1 accompanies this pleading.

---

[2] The Trustee has indicated that she (i) does not oppose the Government intervening in the adversary proceeding; (ii) does not oppose a limited stay of discovery in the adversary proceeding until after the criminal trial; (iii) does not oppose the Government's request for an administrative stay of discovery pending resolution of the Government's motion; (iv) requests that the Court resolve her motion for a preliminary injunction and freezing order (Dkt. 6) and opposes postponing the hearing on that motion; and (v) requests that the Court maintain the current deadlines for the defendants in the adversary proceeding to respond to the complaint and that the Court resolve any related motions that may be brought.

[3] Chu has indicated that he (i) is inclined to consent to the Government's intervening in the adversary proceeding; (ii) is generally inclined to consent to a stay of discovery and evidentiary hearings, but objects to the Court resolving the Trustee's motion for a preliminary injunction and freezing order without Chu having the opportunity to take discovery and present evidence; and (iv) objects to the Government's request for an administrative stay of discovery pending resolution

A stay is necessary to protect the integrity of the criminal prosecution. Without a stay, Chu and Goodgame can exploit civil discovery tools to circumvent the careful limits on criminal discovery imposed by the Federal Rules of Criminal Procedure. They could depose cooperating witnesses whose statements the government need not produce until trial. They could force others to choose between self-incrimination and waiving Fifth Amendment rights. And they could tailor their testimony based on information unavailable through proper criminal discovery channels. These risks are not speculative: Chu has already issued nineteen subpoenas demanding documents and depositions, with return dates as soon as this week. The Court must act now to preserve the integrity of both proceedings.

As the criminal case will likely resolve multiple factual issues also likely present in this litigation, a stay will not prejudice the parties in this matter. Because of the differing burdens of proof in the two proceedings, and the criminal defendants' right to a speedy trial, the criminal case will continue whether this matter is stayed. As it advances, the criminal case will likely marshal the evidence of, and adjudicate, Chu's and Goodgame's awareness of the fraudulent conduct alleged in both proceedings. The criminal case will also likely surface evidence regarding Chu's and Goodgame's control of Tricolor's business, the nature and value of Tricolor's indebtedness, and the relationship between Tricolor and its lenders. Without a stay, these matters would have to be litigated twice in different forums under different burdens of proof. If this action is stayed,

---

of the Government's motions. The Government understands that Chu intends to file a response to the Government's motion and will, among other things, propose adjourning the hearing date on the preliminary injunction motion pending adjudication of the Government's motion. As set forth below, the Government agrees that no evidentiary hearing should be held at this time, it has no objection to staying the preliminary injunction motion, and it has no objection to adjourning the hearing while the Government's motion is pending.

2

however, the criminal case will likely streamline and simplify these proceedings through collateral estoppel.

Accordingly, the Government respectfully requests that the Court stay discovery until the criminal case concludes and enter a temporary administrative stay of discovery to preserve the status quo while the Court adjudicates this motion.

## BACKGROUND

### I.    THE CRIMINAL CASE

On December 15, 2025, a grand jury indicted Chu and Goodgame for orchestrating a massive fraud at Tricolor, a subprime auto lender and used car retailer. The Indictment charges Chu, the founder and former CEO of Tricolor, with organizing a continuing financial crimes enterprise, in violation of 18 U.S.C. § 225, and charges both defendants with conspiracy to commit bank fraud and wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1349, bank fraud, in violation of 18 U.S.C. § 1344, and wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343. *See United States v. Chu*, No. 25 Cr. 579 (PKC) (S.D.N.Y. Dec. 15, 2024) (Dkt. 2) (the "Indictment").[4]

As alleged in the Indictment, from 2018 through September 2025, Chu directed Tricolor executives to defraud the company's lenders through various fraudulent schemes. (Indictment ¶ 1). Chief among these was "double pledging" collateral—using the same assets as collateral for multiple loans. *Id.* Chu also directed manipulation of the descriptions and classification of assets pledged as collateral for loans to make ineligible, near-worthless assets appear to meet lender requirements. *Id.* The fraud's scale was extraordinary. Tricolor obtained hundreds of millions in fraudulent advances. *Id.* Its lenders provided over $1 billion based on fabricated data and false

---

[4] The Indictment is attached as Exhibit 1 to the Declaration of Julia M. Beskin in Support of the Complaint. (Dkt. 1-2).

statements. *Id.* Chu personally extracted millions, including over $17 million in 2025 alone. *Id.* ¶ 25.

In the summer of 2025, lenders confronted Chu and others at Tricolor with concerns about Tricolor's collateral. (Indictment ¶ 2). Chu and his conspirators initially tried to conceal the fraud and to falsely claim that the collateral issues were due to an administrative error. *Id.* Those efforts failed. *Id.* Chu, recognizing that Tricolor was, in his words, "basically history," turned his attention to extracting millions of dollars from the company. *Id.* At Chu's direction, Tricolor transferred over $6 million to Chu after lenders voiced concerns in or about late August 2025. *Id.*

After the fraudulent double-pledging and collateral manipulation schemes orchestrated by Chu and Goodgame unraveled, Tricolor was unable to maintain its access to loans and unable to sustain its business without substantial cash. (Indictment ¶ 3). On September 10, 2025, Tricolor filed for Chapter 7 bankruptcy. *Id.* By that time, the company's largest lenders had advanced and were owed more than $900 million because of the defendants' schemes. *Id.*

Two former Tricolor executives—CFO Jerome Kollar and finance director Ameryn Seibold—pleaded guilty on December 16, 2025, and agreed to cooperate with the Government, including by offering testimony when requested. *See United States v. Kollar*, No. 25 Cr. 584 (PKC) (S.D.N.Y.); *United States v. Seibold*, No. 25 Cr. 585 (PKC) (S.D.N.Y.). The criminal case, assigned to Judge P. Kevin Castel, is proceeding expeditiously. Since the initial pretrial conference on January 13, 2026, the Government has produced hundreds of thousands of documents in discovery. (*See* Affirmation of Justin V. Rodriguez at Exhibit A). The next conference before Judge Castel is scheduled for March 19, 2026. *Id.*

## II.    THE ADVERSARY PROCEEDING

On December 19, 2025, the Trustee initiated an adversary proceeding against Chu, Goodgame, Kollar, and Seibold. (Dkt. 1). Like the Indictment, the adversary proceeding complaint

4

alleges that Chu, Goodgame, Kollar, and Seibold committed fraud while at Tricolor by misrepresenting Tricolor's finance receivables to secure financing from its lending banks. (Dkt. 1 ¶ 1). The complaint extensively references and attaches the Indictment. (*See id.* ¶¶ 11, 54, 56, 68).

According to the complaint, Tricolor "cloned or entirely fabricated loans with a receivable value of over $683 million, which allowed Tricolor to receive hundreds of millions of dollars more in credit from its lending banks than it had lent in auto loans to its consumers." (*Id*. 1 ¶ 10). The complaint further alleges that "from 2023 until the time of Tricolor's bankruptcy filing, as the Company was engaging in a rapidly growing and unsustainable fraud under Chu's leadership, Chu squeezed as much money as he could out of Tricolor by misrepresenting Tricolor's financial condition and unilaterally removing Board members that questioned him." (*Id.* ¶¶ 117). "In 2025 alone, Chu received over $17,000,000 in compensation" from Tricolor. (*Id.*)

On January 10, 2026, the Trustee filed a motion for a temporary restraining order and preliminary injunction enjoining Chu from "transferring, encumbering or otherwise disposing of assets acquired or misappropriated from the Debtor." (Dkt. 6 at ¶ 1). A hearing on the Trustee's motion has been noticed for February 26, 2026. (Dkt. 27).

Chu has moved aggressively to obtain discovery. On January 23, 2026, Chu filed ten subpoenas for documents and depositions, including subpoenas to Kollar and Seibold. (Dkt. 17-26). Then, on January 27 and 28, 2026, Chu filed another nine subpoenas, (Dkt. 28-36), and, on February 2, 2026, Chu filed another two amended subpoenas and four additional subpoenas, (Dkt. 39-44) for a total of 23 subpoenas. (Dkt. 17-26, 28-36, 39-44).  The subpoenas call for deponents to produce documents as soon as February 2, 2026, and depositions as soon as this week. (Dkt. 17-26, 28-36, 39-44).

5

## <u>ARGUMENT</u>

**I.   THE GOVERNMENT IS ENTITLED TO INTERVENE**

The Government has both the right and the interest to intervene. Federal Rule of Civil Procedure 24(a)(2), as incorporated into the Adversary Proceeding through Rule 7024 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), provides that anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests….'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." Both standards are satisfied here.

Courts "have allowed the government to intervene in civil actions … for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988). The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, including authority to control the scope and pace of discovery. *In re Ramu Corp.,* 903 F.2d 312, 318 (5th Cir.1990). *Dominguez v. Hartford Fin. Serv.Group Inc.*, 530 F. Supp.2d 902, 904 (S.D. TX 2008).

Intervention is warranted here because the existing parties cannot adequately protect the Government's interest in enforcing federal criminal laws. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996). And allowing discovery and a trial here without intervention would impair the Government's ability to prosecute its criminal case. Many facts overlap between the Adversary

Proceeding and the criminal case, meaning witnesses may be required to testify multiple times on the same events. A civil trial or evidentiary hearing before the criminal trial creates serious risks of witness preparation that undermines the truth-seeking function of criminal proceedings.

Considering these circumstances, the Government respectfully submits that its unopposed application to intervene should be granted.

II. **DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF THE CRIMINAL CASE**

   A. **Applicable Law**

Courts possess inherent authority to stay proceedings "to control the disposition of the causes on [their] docket with economy of time and effort," *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), and "to control the scope and pace of discovery." *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990). This authority includes a court's wide discretion to stay civil proceedings, postpone discovery, or impose protective orders and conditions during parallel criminal prosecutions "when the interests of justice seem to require such action." *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *see also DeLeon v. City of Corpus Christi,* 488 F.3d 649, 655 (5th Cir. 2007); *Mayo v. Tri-Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 1986). The Fifth Circuit has recognized the propriety of such stays. *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983); *SEC v. First Fin. Grp. of Tex., Inc.,* 659 F.2d 660, 668 (5th Cir. 1981). They are appropriate even when requested by the prosecution. *Kordel*, 397 U.S. at 12 n.27. And they are particularly "warranted … to preserve a defendant's Fifth Amendment right against self-incrimination" and "to prevent extending criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b)." *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 397 (S.D. Tex. 2009) (citing *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)).

In bankruptcy cases, courts have stayed proceedings where Fifth Amendment rights of parties and witnesses are seriously implicated. *See, e.g.*, *In re Zinnel*, 2013 U.S. Dist. LEXIS 46114, 2013 WL 128439 (E.D. Cal. March 28, 2013) (granting stay of bankruptcy appeal where debtor was criminally accused of engaging in enterprise through which he allegedly obtained assets); *In re SK Foods, L.P.*, 2010 U.S. Dist. LEXIS 136188 (E.D. Cal. Dec. 9, 2010); (reversing denial of stay where bankruptcy litigation threatened principal's privilege against self-incrimination); *In re Marceca*, 131 B.R. 774, 778 (Bankr. S.D.N.Y. 1991) (granting stay pending criminal investigation).

Courts in this Circuit considering whether to grant a stay weigh six factors: "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest." *Alcala*, 625 F. Supp. 2d at 398-99 (collecting cases); *see also Heller Healthcare Fin., Inc. v. Boyes*, No. Civ.A. 300CV1335D, 2002 WL 1558337, at *2 (N.D. Tex. July 15, 2002) (citing *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

## B. Application of the Stay Factors

All six factors considered within this Circuit favor a stay of discovery, including depositions and witness testimony, through the adversary proceeding while the criminal case is pending.

### 1. *Substantial Overlap Exists*

The extent of overlap between proceedings is the "most important factor" in determining whether a stay is appropriate. *S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07 Civ. 1188, 2008 WL

866065, at *2 (N.D. Tex. Mar. 17, 2008) (quoting *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)). And when there are "overlapping issues", that "weigh[s] heavily in favor of granting a stay." *State Farm Lloyds v. Wood*, No. 06 Civ. 503, 2006 WL 3691115, at *2 (S.D. Tex. Dec. 12, 2006). *Dominguez*, 530 F. Supp 2d at 904-906. The relevant question is whether substantially the same facts would be proven twice, wasting resources and burdening witnesses. *SEC v. Shkreli*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at *4 (E.D.N.Y. Mar. 22, 2016); *Tuzman*, 15 Civ. 7057 (AJN), ECF No. 43, at 3. Dominguez, 530 F. Supp 2d at 907.

Here, the answer is unambiguously yes. The overlap between this proceeding and the criminal case is nearly complete. Both arise from the same alleged fraud scheme. Both involve the same four individuals. Both will require proof of substantially the same facts through the same witnesses.

### 2.     *The Criminal Case is Proceeding Expeditiously*

Chu and Goodgame have already been indicted which weighs in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted). For good reason: "the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved." *Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).

Here, although a trial date has not yet been set in the criminal case, the proceeding is moving quickly. The Government has produced and is continuing to produce substantial discovery material. (See Affirmation of Justin V. Rodriguez). The Government also intends to request an expeditious trial date at or in advance of the next conference, currently scheduled for March 19, 2026. *Id.* The forward progress of the criminal case strongly favors a stay. *See Tuzman*, 15 Civ.

7057 (AJN), at 3 (noting that an indictment normally weighs heavily in favor of a stay absent particular facts indicating that the criminal case may not be resolved expeditiously).

### 3. *The Trustee's Interests Do Not Outweigh the Need for a Stay*

The Trustee does not object to the stay of discovery, but requests that the Trustee's motion for a preliminary injunction still be adjudicated. Because Chu—who also generally consents to a stay—objects to proceeding to an evidentiary hearing on that motion, the Government's motion would effectively require a stay of the hearing on the Trustee's motion. But even if that is so, the Trustee's interest in an immediate hearing (and if necessary, discovery as part of that hearing) would not outweigh the compelling reasons for a stay. The criminal case is advancing rapidly. Resolution of the criminal charges will likely narrow or resolve issues in this adversary proceeding, ultimately serving the Trustee's interests. Indeed, the criminal case will likely also have the effect of freezing and preserving assets, and resolution of the criminal case may result in the forfeiture of assets that would otherwise be the subject of the preliminary injunction motion. And while the stay potentially prevents the adjudication of certain motions, the interest in resolving those motions is outweighed by the prejudice that civil discovery would inflict on the criminal case. This factor favors a stay.

### 4. *The Defendants' Interests Support a Stay*

A stay also protects defendants' interests. Without a stay, Chu and Goodgame face an impossible choice: assert their Fifth Amendment rights in civil discovery and suffer adverse inferences in this proceeding or waive those rights and jeopardize their criminal defense. Courts recognize this dilemma as a compelling reason for a stay. *See Shkreli*, 2016 WL 1122029, at *3 n.3 ("[C]riminal defendants frequently seek stays in parallel civil enforcement proceedings, often due to an adverse inference that can arise from a party's invocation of the Fifth Amendment

10

privilege against self-incrimination."). The stay eliminates this dilemma. It allows defendants, including the defendants cooperating with the Government in the criminal case, to fully participate in civil discovery after the criminal case concludes, when Fifth Amendment concerns no longer exist. Far from burdening defendants, the stay protects their constitutional rights while ensuring fair proceedings in both cases. This factor weighs in favor of a stay.

### 5. *Judicial Economy Favors a Stay*

Considerations of judicial economy also weigh in favor of granting a stay. Resolving common issues in the criminal case first will streamline this proceeding. The criminal case's outcome will likely affect the scope and conduct of the adversary proceeding, potentially establishing facts that narrow or resolve civil claims. Requiring witnesses to testify twice on the same events wastes judicial resources and burdens the truth-finding process. Courts routinely recognize these efficiency concerns. *See SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). A stay avoids duplicative proceedings and conserves this Court's resources. This factor supports the Government's application.

### 6. *The Public Interest Strongly Supports a Stay*

The public interest in this case is paramount. Allowing unfettered civil discovery would undermine the careful balance struck by Congress in the Federal Rules of Criminal Procedure. Criminal discovery is purposefully limited to prevent three specific harms: perjury and manufactured evidence, witness intimidation, and unfair surprise at trial. *Tuzman*, 15 Civ. 7057 (AJN), at 3-4 (internal citations and quotations omitted). These are not abstract concerns. Broad civil discovery allows criminal defendants to preview the prosecution's case, learn witness

11

identities, and tailor testimony accordingly—all while invoking the Fifth Amendment to avoid reciprocal disclosure. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

The asymmetry here would be stark. Chu and Goodgame would depose witnesses (including cooperating co-conspirators whose statements the government need not produce until trial under 18 U.S.C. § 3500), propound interrogatories, and submit requests for admission—all while refusing to answer questions themselves. The Trustee would be powerless to obtain reciprocal discovery because of defendants' certain invocation of Fifth Amendment rights. *See, e.g.*, *SEC v. Calabrigo*, No. 22 Civ. 3096 (LJL), 2022 WL 4752427, at *5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings); *Nicholas*, 569 F. Supp. 2d at 1070 (noting that when defendants invoke Fifth Amendment rights "the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants"). This is precisely the circumvention of criminal discovery rules that courts consistently reject. *See SEC v. Beacon Hill Asset Mgmt. LLC*, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) ("The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery

12

to circumvent limitations on discovery in criminal cases."); *Bd. of Governors v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery.").

The public also has a strong interest in ensuring that cooperating witnesses can fulfill their obligations without being subjected to premature depositions that may affect their credibility or willingness to testify. Kollar and Seibold have entered into cooperation agreements with the government. Forcing them to testify now—before the criminal trial—could compromise their cooperation, undermine the criminal prosecution, and discourage future cooperators from coming forward.

Therefore, to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent a defendant from tailoring his testimony and obtaining asymmetrical discovery, and because Chu and Goodgame will not in any way be prejudiced in preparing and defending themselves, this factor weighs in favor of the Government's application.

## III. THE COURT SHOULD ENTER AN IMMEDIATE ADMINISTRATIVE STAY.

Pursuant to its inherent authority to stay proceedings "to control the disposition of the causes on [their] docket with economy of time and effort," *Landis*, 299 U.S. at 254, and "to control the scope and pace of discovery." *In re Ramu Corp.*, 903 F.2d at 318, the Court should enter an immediate administrative stay to preserve the status quo and prevent the very harm the Government's motion is meant to avoid. Among other things, the 23 subpoenas that Chu issued in the last two weeks should be and the evidentiary hearing the Trustee's motion for a preliminary injunction should be stayed while the Court considers the Government's motion to intervene and stay discovery.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that its application to intervene and for a stay of discovery in this Adversary Proceeding until the conclusion of the Criminal Case be granted. In addition, the Government respectfully requests that the Court issue an immediate temporary administrative stay of all discovery and evidentiary hearings while it considers the Government's motion to intervene and stay discovery.

Dated: New York, New York

February 4, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division


*/s/ Dominique Sinesi*
KIRK T. MANHARDT
MARY SCHMERGEL
DOMINIQUE SINESI
United States Department of Justice
Civil Division
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-0068
Dominique.sinesi@usdoj.gov

14

Certificate of Service

On February 4, 2026, I electronically submitted the foregoing Brief, motion and proposed order seeking leave to intervene and to stay discovery with the clerk of court for the U.S. Bankruptcy Court, Northern District of Texas, using the electronic case filing system of the court.   I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

<em>/s/Dominique V. Sinesi</em>

Dominique V. Sinesi

15

Certificate of Conference

On February 4, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. Bankruptcy Court, Northern District of Texas, using the electronic case filing system of the court.   I hereby certify that counsel from the U.S. Attorney's Office for the Southern District of New York ("SDNY") sought to reach a consensual agreement on this motion and that the foregoing document sets forth each party's position with respect to the relief requested, as is represented by a certificate of conference prepared by the counsel in SDNY that accompanies this Certificate as Exhibit B.   While the many parties do consent, counsel for Defendant Chu has not fully agreed to the relief sought.

_/s/Dominique V. Sinesi_
Dominique V. Sinesi

16