**MCDERMOTT WILL & SCHULTE LLP**
Charles R. Gibbs (TX Bar No. 7846300)
Marcus A. Helt (TX Bar No. 24052187)
Grayson Williams (TX Bar No. 24124561)
2801 North Harwood Street
Suite 2600
Dallas, Texas 75201
Telephone: (214) 295-8000
E-mail: crgibbs@mcdermottlaw.com
        mhelt@mcdermottlaw.com
        gwilliams@mcdermottlaw.com

*Counsel to the Chapter 7 Trustee*

**MCDERMOTT WILL & SCHULTE LLP**
Darren Azman (admitted *pro hac vice*)
Jared M. Gerber (admitted *pro hac vice*)
Timothy C. Cramton (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
E-mail: dazman@mcdermottlaw.com
        jmgerber@mcdermottlaw.com
        tcramton@mcdermottlaw.com

**MCDERMOTT WILL & SCHULTE LLP**
Julia M. Beskin (admitted *pro hac vice*)
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Email: jbeskin@mcdermottlaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| TRICOLOR HOLDINGS, LLC, *et al.*, | ) | Case No. 25-33487 (MVL) |
| | ) | |
| Debtors. [1] | ) | (Jointly Administered) |
| | ) | |
| ANNE ELIZABETH BURNS, as Chapter 7 Trustee for Tricolor Holdings, LLC, *et al.*, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 3:25-ap-03126 |
| | ) | |
| DANIEL CHU, JEROME KOLLAR, DAVID GOODGAME, and AMERYN SEIBOLD, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO
## DANIEL CHU'S MOTION TO DISMISS THE ADVERSARY COMPLAINT

---

[1] The Debtors in these Chapter 7 cases are as follows: Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home

---

Loans LLC dba Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group, LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, TAG Asset Funding, LLC, and Apoyo Financial, LLC.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND ...............................................................................3

ARGUMENT ...................................................................................................5

I.    CHU'S ATTEMPT TO INVOKE THE AFFIRMATIVE DEFENSE OF *IN
      PARI DELICTO* FAILS FOR A HOST OF REASONS.........................................6

      A.    Courts Have Universally Held That *In Pari Delicto* Cannot Be
            Asserted Against a Company or Trustee by Insiders (Like Chu) Who
            Committed the Underlying Wrongdoing ....................................................7

      B.    Even If the *In Pari Delicto* Defense Could Be Available to An Insider
            Like Chu, It Would Not Apply Here Under the Adverse Interest
            Exception ................................................................................................9

      C.    If the Court Does Not Deny the Motion to Dismiss on *In Pari Delicto*
            Grounds for the Reasons Discussed Above, It Should Still Reject the
            Affirmative Defense as Premature at the Motion-to-Dismiss Stage..........11

      D.    Chu Does Not Establish That *In Pari Delicto* Applies to All of the
            Claims Asserted in the Complaint ............................................................13

II.   THE COMPLAINT'S FRAUD CLAIMS (COUNTS I, VIII, XI) ARE
      ADEQUATELY PLEADED ...............................................................................14

III.  CHU'S HODGEPODGE OF ADDITIONAL ARGUMENTS AGAINST
      CERTAIN OTHER CLAIMS SHOULD BE REJECTED....................................18

      A.    The Breach of Fiduciary Duty, Breach of the Implied Covenant, And
            Unjust Enrichment Claims Should Not Be Dismissed Based on the
            Contract Claim .......................................................................................18

      B.    Chu's Arguments About the Turnover, Civil Conspiracy, Constructive
            Trust, and Accounting Claims Should Be Rejected...................................22

IV.   ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE...............................24

CONCLUSION ...................................................................................................25

## TABLE OF AUTHORITIES

*Agar Corp. v. Electro Circuits Int'l, LLC*,
    580 S.W.3d 136 (Tex. 2019) ................................................................23

*In re Am. Hous. Found.*,
    2011 WL 4625349 (Bankr. N.D. Tex. Sep. 30, 2011) ....................................12, 13

*Amcast Indus. Corp. v. Baker (In re Amcast Indus. Corp.)*,
    365 B.R. 91 (Bankr. S.D. Ohio 2007) ........................................................8

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. Of Internal Med.*,
    103 F.4th 383 (5th Cir. 2024) .............................................................25

*Bernard L. Madoff Inv. Sec. LLC v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*,
    458 B.R. 87 (Bankr. S.D.N.Y. 2011) ........................................................8

*Cantor Fitzgerald, L.P. v. Cantor*,
    724 A.2d 571 (Del. Ch. 1998) .............................................................19

*CBI Holding Co. v. Ernst & Young (In re CBI Holding Co.)*,
    529 F.3d 432 (2d Cir. 2008) ..............................................................10

*In re CBL & Assocs. Props., Inc. Sec. Litig.*,
    2022 WL 1405415 (E.D. Tenn. May 3, 2022) .................................................15

*U.S. Commodity Futures Trading Comm'n v. M25 Invs. Inc.*,
    2010 WL 769367 (N.D. Tex. Mar. 6, 2010) .................................................17, 18

*Chris Pettit & Assocs., P.C. v. Tex. Partners Bank (In re Chris Pettit & Assocs.), P.C.*,
    670 B.R. 602 (Bankr. W.D. Tex. 2025) ......................................................12

*Dunlap v. State Farm Fire & Cas. Co.*,
    878 A.2d 434 (Del. 2005) .................................................................22

*Felt Mfg. Co. v. Foss (In re Felt Mfg. Co.)*,
    371 B.R. 589 (Bankr. D.N.H. 2007) .......................................................11, 14

*Fidelity & Deposit Co. of Md. v. Com. Cas. Consultants, Inc.*,
    976 F.2d 272 (5th Cir. 1992) .............................................................20

*Fordu v. Fordu (In re Fordu)*,
    209 B.R. 854 (B.A.P. 6th Cir. 1997) ......................................................14

*Gerber v. Enter. Prods. Holdings, LLC*,
    67 A.3d 400 (Del. 2013) ..................................................................21

*Goodman Networks, Inc. v. MSouth Equity Partners III, L.P. (In re Goodman
    Networks, Inc.)*,
    2025 WL 73072 (Bankr. N.D. Tex. Jan. 10, 2025).................................................... 5-7, 14, 16

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002) ..............................................................................25

*Hampton Hotel Invs., L.P. v. Beeler (In re Hampton Hotel Invs., L.P.)*,
    289 B.R. 563 (Bankr. S.D.N.Y. 2003) ...................................................................8

*In re HealthSouth Corp. S'holders Litig.*,
    845 A.2d 1096 (Del. Ch. 2003)..............................................................................8

*Hernandez v. Causey*,
    124 F.4th 325 (5th Cir. 2024) ...............................................................................5

*Invs. Funding Corp. of N.Y. Sec. Litig.v. Dansker (In re Invs. Funding Corp. of
    N.Y. Sec. Litig.)*,
    523 F. Supp. 533 (S.D.N.Y. 1980) .......................................................................10

*Jackson Law Office, P.C. v. Chappell*,
    37 S.W.3d 15 (Tex. Ct. App. 2000) ......................................................................16

*Jeanty v. Big Bubba's Bail Bonds*,
    72 F.4th 116 (5th Cir. 2023) ............................................................................6, 13

*Johnson & Johnson v. Fortis Advisors LLC*,
    __ A.3d __, 2026 WL 89452 (Del. Jan. 12, 2026)..............................................21

*Jurista v. Amerinox Processing, Inc.*,
    492 B.R. 707 (D.N.J. 2013) ....................................................................................8

*KDI Holdings, Inc. v. Austin Fin. Servs., Inc. (In re KDI Holdings, Inc.)*,
    277 B.R. 493 (Bankr. S.D.N.Y.1999) .....................................................................8

*Kipperman v. Onex Corp.*,
    411 B.R. 805 (N.D. Ga. 2009) ..............................................................................14

*L. B. Benon Fam. Ltd. P'ship v. Wells Fargo Bank, N.A.*,
    2022 WL 16825204 (W.D. Tex. Nov. 7, 2022)....................................................20

*Legal Xtranet v. AT & T Mgmt. Servs. (In re Legal Xtranet)*,
    2011 WL 3236053 (Bankr. W.D. Tex. July 26, 2011) ..................................... 22-23

*Lewis v. Davis*,
    199 S.W.2d 146 (Tex. 1947)..................................................................................12

*Littell v. Hou. Indep. Sch. Dist.*,
   894 F.3d 616 (5th Cir. 2018) ...........................................................................6

*Marquis v. OmniGuide, Inc.*,
   2011 WL 321112 (N.D. Tex. Jan. 28, 2011) ..................................................... 6-7

*Mart v. Tactile Sys. Tech., Inc.*,
   595 F. Supp. 3d 788 (D. Minn. 2022)...............................................................15

*Megatel Homes, LLC v. Moayedi*,
   2022 WL 2306949 (N.D. Tex. 27, 2022)............................................................17

*Metro Storage Int'l LLC v. Harron*,
   275 A.3d 810 (Del. Ch. 2022)..........................................................................19

*N. Tex. Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*,
   107 F. Supp. 3d 620 (N.D. Tex. 2015) ........................................................ 16-17

*Nat'l Century Fin. Enters., Inc., Inv. Litig. v. JP Morgan Chase Bank (In re Nat'l
   Century Fin. Enters., Inc., Inv. Litig.)*,
   617 F. Supp. 2d 700 (S.D. Ohio 2009) ........................................................... 7-8

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) .............................................................................20

*Nespon Inc. v. N. State Tel., LLC*,
   2025 WL 2374680 (N.D. Tex. Aug. 14, 2025)......................................................6

*Nortel Networks, Inc. v. Commc'n Test Design (In re Nortel Networks, Inc.)*,
   2011 WL 1102829 (Bankr. D. Del. 2011) ...........................................................19

*Oakwood Homes Corp. v. Credit Suisse First Bos. (In re Oakwood Homes Corp.)*,
   340 B.R. 510 (Bankr. D. Del. 2006) ...................................................................8

*In re Olympia Brewing Co. Sec. Litig.*,
   1985 WL 3928 (N.D. Ill. Nov. 13, 1985) ...........................................................14

*Osherow v. York*,
   2019 WL 6048017 (Bankr. W.D. Tex. Aug. 5, 2019) ...........................................12

*OurLink, LLC v. Goldberg*,
   2008 WL 11425698 (N.D. Tex. Dec. 3, 2008) .....................................................18

*Pan Am. Trade & Inv. Corp. v. Commercial Metals Co.*,
   94 A.2d 700 (Del. Ch. 1953)............................................................................24

*Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*,
   771 F. Supp. 2d 680 (S.D. Tex. 2011) ...............................................................19

*Phillips v. Hove*,
  2011 WL 4404034 (Del. Ch. Sep. 22, 2011) ........................................................20

*In re Platinum-Beechwood Litig.*,
  2019 WL 2569653 (S.D.N.Y. June 21, 2019) ..........................................................8

*In re Providian Fin. Corp. Sec. Litig.*,
  152 F. Supp. 2d 814 (E.D. Pa. 2001) ...................................................................15

*Reagor-Dykes Motors, LP, v. Firstcapital Bank of Tex, N.A. (In re Reagor-Dykes Motors, LP)*,
  2020 WL 4939180 (Bankr. N.D. Tex. Aug. 24, 2020) ..........................................12

*Riddley v. CooperSurgical, Inc.*,
  2024 WL 4557340 (N.D. Tex. Oct. 23, 2024) ..........................................................6

*RJ Assocs., Inc. v. Health Payors' Org. Ltd. P'ship, HPA, Inc.*,
  1999 WL 550350 (Del. Ch. July 16, 1999) ...................................................... 19-20

*Ross v. Marshall*,
  426 F.3d 745 (5th Cir. 2005) ....................................................................................9

*Russell v. Rich*,
  2025 WL 2816793 (N.D. Tex. June 2, 2025) ..................................................21, 24

*SEC v. Verges*,
  716 F. Supp. 3d 456 (N.D. Tex. 2024) ..................................................................18

*Stewart v. BF Bolthouse Holdco, LLC*,
  2013 WL 5210220 (Del. Ch. Aug. 30, 2013) ........................................................20

*Stringer v. Remington Arms Co.*,
  52 F.4th 660 (5th Cir. 2022) ..................................................................................25

*Stripling v. Jordan Prod. Co.*,
  234 F.3d 863 (5th Cir. 2000) ..................................................................................25

*Sunpoint Sec., Inc. v. Fuller (In re Sunpoint Sec., Inc.)*,
  377 B.R. 513 (Bankr. E.D. Tex. 2007) ...............................................................9, 10

*Sw. Bell Tel. Co. v. DeLanney*,
  809 S.W.2d 493 (Tex. 1991) ..................................................................................20

*Today's Destiny, Inc. v. Day (In re Today's Destiny, Inc.)*,
  388 B.R. 737 (Bankr. S.D. Tex. 2008) ...........................................................2, 9, 12

*U.S. Risk LLC v. Chubb Glob. Mkts. Syndicate 2488*,
  2023 WL 348998 (N.D. Tex. Jan. 19, 2023) .................................................... 20-21

*UD Dissolution Corp. v. Sphere 3D Corp. (In re UD Dissolution Corp.)*,
    629 B.R. 11 (Bankr. D. Del. 2021) .................................................................... 18-19

*Vantage Benefits Admins., Inc v. matrix Tr. Co. (In re Vantage Benefits Admins.),
    Inc.*,
    2021 WL 1815065 (Bankr. N.D. Tex. May 5, 2021)............................................12

*Vendsouth, Inc. v. Arth (In re Vendsouth, Inc.)*,
    2003 WL 22399581 (Bankr. M.D.N.C. Oct. 10, 2003) ..........................................10

*VTB Bank v. Navitron Projects Corp.*,
    2014 WL 1691250 (Del. Ch. Apr. 28, 2014) ................................................... 23-24

*Walnut Leasing Co. v. Shapiro (In re Walnut Leasing Co.)*,
    1999 WL 729267 (E.D. Pa. Sept. 8, 1999) ...............................................................8

*Wojtkun v. Wojtkun* (*In re Wojtkun*),
    534 B.R. 435 (Bankr. D. Mass. 2015) .....................................................................8

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................... 16-18, 25

Fed. R. Civ. P. 12(b)(6).........................................................................................5, 6, 12

Anne Elizabeth Burns, in her capacity as the Chapter 7 trustee (the "Trustee") of the estates

of the Debtors in the above-captioned Chapter 7 proceedings (the "Chapter 7 Cases"), by and

through her undersigned counsel, respectfully submits this Memorandum of Law in Opposition to

Daniel Chu's Motion to Dismiss the Adversary Complaint (Dkt. 82) (the "Motion to Dismiss").

## PRELIMINARY STATEMENT

This action concerns the rampant wrongdoing perpetrated by Daniel Chu at the now-

bankrupt subprime auto lender Tricolor.[2] As the CEO of Tricolor, Chu directed a massive double-

pledging and fake loan scheme that falsified more than $680 million of loans from 2018 through

2025, which has now led to him being indicted on felony fraud charges that carry sentences of up

to life in prison. Chu's misconduct is described in detail in the Complaint, which cites specific text

messages and recorded conversations in which Chu directed others to pledge the same loans to

multiple lenders, manually enter fake loan data, and otherwise "fabricate" or "make up [] loans."

This wrongdoing inflicted significant harm on Tricolor, ultimately driving it into bankruptcy. And,

as Chu's scheme reached unsustainable levels, he further looted the Company – strong-arming and

defrauding it into paying him an outrageous $15 million bonus just months before the bankruptcy

and routinely using corporate funds to pay for millions of dollars in personal expenses.

These actions unquestionably breached Chu's fiduciary duties, violated his express and

implied contractual obligations, defrauded the Company into paying him unwarranted

compensation, resulted in him receiving inequitable preferences and fraudulent transfers, and

otherwise unjustly enriched him at the expense of Tricolor. Unable to seriously dispute that this

rampant misconduct states a viable claim for relief, Chu instead uses his Motion to Dismiss to tell

---

[2] The Debtors are referred to collectively as "Tricolor" or the "Company." References to "MTD at __" are to Daniel Chu's Memorandum of Law in Support of his Motion to Dismiss the Adversary Complaint (Dkt. 83). Unless otherwise indicated, all internal citations and alterations are omitted.

a self-serving narrative that conflicts with the allegations in the Complaint in an attempt to deflect blame onto others, resorts to asking the Court to accept a clearly inapplicable affirmative defense, and otherwise advances a series of minor arguments contending that the Trustee should be prohibited from pleading in the alternative or seeking certain remedies. All of these arguments fail.

Chu's primary argument – that his own criminal misconduct should be imputed to Tricolor and, under the doctrine of *in pari delicto*, prevent the Trustee from seeking to hold him accountable for the harm that he inflicted upon the Company – has been universally rejected, and even derided by courts as "absurd" and "transparently silly." In fact, even one of the decisions that Chu cites in support of this argument bluntly rejected it, stating in words that Chu ignores: "No case, logic, or equitable proposition supports the conclusion that insiders of a bankrupt corporation can insulate themselves from liability by virtue of the illegal character of their conduct." *Today's Destiny, Inc. v. Day (In re Today's Destiny, Inc.)*, 388 B.R. 737, 749 (Bankr. S.D. Tex. 2008) (cited MTD at 5). In any event, Chu's *in pari delicto* argument fails for a host of other reasons, including that his wrongdoing cannot be imputed to Tricolor because that misconduct benefitted Chu himself rather than the Company, the application of this defense requires a fact-specific public policy analysis that courts have routinely held cannot be resolved on a motion to dismiss, and Chu makes no attempt to establish that the doctrine can be applied to most of the claims in the Complaint.

Chu's other scattershot arguments against a subset of the Trustee's claims fare no better: the Complaint adequately pleads a claim that Chu defrauded Tricolor by failing to disclose his wrongdoing, which damaged the Company by driving it into bankruptcy and causing it to pay Chu outrageously excessive bonus compensation; the Federal Rules allow the Trustee to plead breach of fiduciary duty, implied covenant, and unjust enrichment claims in the alternative to breach of contract; and the remedies sought in the Complaint need not be dismissed at this time.

For these reasons, as described in more detail below, the Court should deny the Motion to Dismiss so that this action can proceed and Chu can be held accountable for the damage that his staggering wrongdoing has inflicted on the Company.

## FACTUAL BACKGROUND

Defendant Daniel Chu's professional life has been marred by wrongdoing at seemingly every position that he has ever held. Compl. ¶ 25. From his time as a college basketball coach (where he violated NCAA rules by directing payouts to athletes) to subsequent corporate positions (where he oversaw companies that engaged in accounting irregularities and used investor funds for personal obligations), *id.* ¶¶ 27-28, Chu has often tested the boundaries of his legal and ethical obligations. But this pattern of wrongdoing reached its peak at Tricolor, a "buy here, pay here" subprime auto finance company where Chu served as CEO for nearly two decades. *Id.* ¶¶ 2, 4, 31.

As detailed in a lengthy criminal indictment charging Chu with wire fraud, bank fraud, conspiracy, and operating a financial crimes enterprise – which cites specific text messages sent and received by Chu, as well as recordings of conversations involving Chu – Chu and certain other Tricolor executives engaged in a brazen double-pledging and fake loan scheme from 2018 through 2025, under which they duplicated, falsified, or entirely fabricated loans in order to borrow more money from the Company's lenders and issue more asset-backed securities to investors. *Id.* ¶¶ 1, 8-9, 11, 54-66. The indictment lays out in graphic detail Chu's knowledge of, involvement in, and direction of this wrongdoing, including: his instruction to others at the Company in 2018 to "pledge past-due loans" and "manually enter fake payments from customers on those charged-off loans," *id.* ¶ 55; his questioning over text in January 2021 of whether "there was 'anything we can pledge' from one lender to another lender," *id.* ¶ 56; his suggestion in another text from 2021 that Tricolor "'increase inventory by $10mm'" to "allow it to remove sold units that were fraudulently misrepresented in its borrowing base for inventory credit lines," *id.* ¶ 58; his questioning in a July

2022 text about whether the Company could "'work'" its loans by manually changing data, *id.* ¶ 60; his receipt of a text in November 2022 that his co-conspirators were "'work[ing] to squeeze a little more out'" from lenders, *id.* ¶ 61; his acknowledgement in a July 2021 text that his co-conspirators would "'need to make sure [the auditor] does not try to [t]ie out'" the manipulated loan data provided to lenders, which could have revealed their fraud, *id.* ¶ 63; his request over text in July 2023 that a co-conspirator "'reconstruct'" a lender's borrowing base to prevent detection, *id.*; and his statements during an August 2025 call that he and his co-conspirators "'made all the math work'" by "'fabricat[ing]'" and "'mak[ing] up these loans,'" *id.* ¶ 68.

The Trustee's own forensic accounting and fraud investigation has provided further detail about the massive scope of Chu's scheme: "[t]o date, this investigation has uncovered 38,368 false finance receivable accounts" that "represented ***$683 million*** in reported value on Tricolor's books." *Id.* ¶ 76. This enormous fraud resulted in the Company being "excessively leveraged" and "put into a precarious economic situation" since it had duplicative payment obligations from a limited set of real loans. *Id.* ¶ 82. When the Company's lenders discovered the scheme and terminated their warehouse lending agreements with Tricolor in August 2025, the Company was therefore unable to satisfy its obligations and was forced to file bankruptcy. *Id.* ¶¶ 88-91.

But Chu did not just mislead lenders and asset-backed securities investors when perpetuating his fake loan scheme. To the contrary, Chu also defrauded Tricolor itself by failing to disclose that scheme and instead presenting himself as a successful entrepreneur leading a booming business. *Id.* ¶ 2. And he did so for his personal benefit: using that "veneer of financial success" to extract unjustified compensation from the Company, including coercing the Company into approving "a one-time special bonus of $15,000,000" in February 2025 "premised entirely on the fabricated appearance of massive growth that was, in reality, a result of [his] fraud." *Id.* ¶¶ 114-

15, 155. Chu also used his underlying wrongdoing to prop up the Company so that he could continue to improperly use his corporate American Express cards to pay for his personal expenses, including spending millions of dollars of corporate funds on lavish personal travel, dining, healthcare, and beauty expenses, which he falsely represented to the Company as "completely business-driven" charges. *Id.* ¶¶ 102, 121. In fact, "[i]n the year leading up to the bankruptcy, Tricolor made payments to Chu in a total amount of $29,605,737," which "allowed him to fund his lavish lifestyle—including opulent homes . . . (collectively worth approximately $38 million), as well as other personal luxuries such as private jet travel, expensive European vacations, cars, and even a personal ski chalet." *Id.* ¶¶ 2, 119.

The Trustee filed this action against Chu and certain of his co-conspirators on December 19, 2025, asserting claims of fraud, breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, turnover, avoidance of preferential transfers, actual and constructive fraudulent transfer, civil conspiracy, unjust enrichment, constructive trust, and accounting, *id.* ¶¶ 12, 145-269, which Chu moved to dismiss on February 10, 2026. (Dkt. 82.)

## ARGUMENT

"In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Goodman Networks, Inc. v. MSouth Equity Partners III, L.P. (In re Goodman Networks, Inc.)*, 2025 WL 73072, at *1 (Bankr. N.D. Tex. Jan. 10, 2025) (Larson, J.). In addition, "[a]ll questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Hernandez v. Causey*, 124 F.4th 325, 331 (5th Cir. 2024). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations, which, if accepted as true, state a plausible cause of action." *Goodman*, 2025 WL 73072, at *2. "This plausibility requirement sits somewhere between possible and probable, and is satisfied where the plaintiff's pleaded facts allow the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"However, because these motions must be resolved at the outset of a case, before discovery is

completed and findings of fact are made, the burden is a comparatively light one." *Riddley v.*

*CooperSurgical, Inc.*, 2024 WL 4557340, at *2 (N.D. Tex. Oct. 23, 2024); *see also Nespon Inc. v.*

*N. State Tel., LLC*, 2025 WL 2374680, at *2 (N.D. Tex. Aug. 14, 2025) ("The standard for

surviving a motion to dismiss is quite low as a defendant must clear a high threshold before its

motion can be granted."). Thus, "a complaint need not contain detailed factual allegations" and

"may proceed even if recovery is very remote and unlikely, so long as the alleged facts raise a right

to relief above the speculative level." *Littell v. Hou. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir.

2018). Indeed, "numerous courts within the Fifth Circuit have reiterated that because 'a complaint

must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is

generally viewed with disfavor and is rarely granted.'" *Goodman*, 2025 WL 73072, at *2.

The Complaint here easily satisfies these standards, and Chu fails to establish that this is

the "rare[]" case requiring dismissal at this stage. *Id.*

## I.    CHU'S ATTEMPT TO INVOKE THE AFFIRMATIVE DEFENSE OF *IN PARI DELICTO* FAILS FOR A HOST OF REASONS

Tellingly, Chu's primary argument for dismissing the Complaint is that the Court should

accept the ***affirmative defense*** of *in pari delicto* at the pleading stage. MTD at 4-6. Although a

motion to dismiss may be granted on the basis of an affirmative defense in unusual cases where

that defense "appears on the face of the complaint;" "[i]n such a scenario, the pleadings must reveal

beyond doubt that the plaintiffs can prove no set of facts that would overcome the defense or

otherwise entitle them to relief." *Jeanty v. Big Bubba's Bail Bonds*, 72 F.4th 116, 119 (5th Cir.

2023). In short, "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is

appropriate only where the plaintiff pleads himself out of court by 'admitting all the ingredients of

6

an impenetrable defense.'" *Marquis v. OmniGuide, Inc.*, 2011 WL 321112, at *4 (N.D. Tex. Jan. 28, 2011). Thus, as this Court has observed, "not only does a defendant bear the burden of proving a[n affirmative] defense" at the pleading stage, but Fifth Circuit authority imposes a "high bar that a defendant must hurdle to show an affirmative defense on the face of the complaint." *Goodman*, 2025 WL 73072, at *12. Chu's superficial arguments – which do not acknowledge, let alone defeat, the limitations of the *in pari delicto* affirmative defense – come nowhere close to satisfying that "high bar" here. Instead, Chu merely claims that *in pari delicto* appears on the face of the Complaint because that defense purportedly "bars a corporate plaintiff from recovering from a defendant when the corporation's management participated in the alleged wrongdoing." MTD at 4. In other words, Chu argues that his own criminal activity should insulate him from liability against one of the companies that he defrauded. Not surprisingly, this argument – which attempts to pervert the *in pari delicto* defense from one intended to serve the public interest by denying assistance to wrongdoers into one that can insulate a wrongdoer from liability based on his own misconduct – fails for a host of reasons, even under the case law that Chu cites.

### A. Courts Have Universally Held That *In Pari Delicto* Cannot Be Asserted Against a Company or Trustee by Insiders (Like Chu) Who Committed the Underlying Wrongdoing

As a threshold matter, Chu's attempt to invoke the *in pari delicto* defense must be rejected because courts across the country have uniformly held that *in pari delicto* cannot be used by the corporate insiders that are responsible for the relevant wrongdoing to bar claims asserted against them by the company or a trustee concerning that wrongdoing. *See, e.g.*, *Nat'l Century Fin. Enters., Inc., Inv. Litig. v. JP Morgan Chase Bank (In re Nat'l Century Fin. Enters., Inc., Inv. Litig.)*, 617 F. Supp. 2d 700, 712 (S.D. Ohio 2009) ("Courts [] have repeatedly held that the *in pari*

*delicto* defense 'does not apply to bar claims against corporate insiders.'") (collecting cases).[3]

Courts have consistently reached this result because companies (not to mention their creditors)

cannot be seen as at "equal fault" with the insiders who committed (or failed to detect) the relevant

wrongdoing, and "[t]o hold otherwise would be to leave the constituencies of corporate entities –

including public stockholders and creditors – with no recourse when their corporation is injured

by its managers." *In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096, 1107-08 (Del. Ch.

2003) (Strine, J.). Indeed, courts have referred to this rule as "well established," *Bernard L. Madoff*

*Investment Securities LLC v. Madoff (In re Bernard L. Madoff Investment Securities LLC)*, 458

B.R. 87, 109 (Bankr. S.D.N.Y. 2011), and have bluntly rejected attempts by corporate insiders to

assert the *in pari delicto* defense against their companies and trustees as "absurd"[4] and

"transparently silly" (even when asserted by a CEO, like Chu, who self-servingly claims that he

was not aware of the wrongdoing at the company).[5]

---

[3] *See also Wojtkun v. Wojtkun (In re Wojtkun)*, 534 B.R. 435, 459 (Bankr. D. Mass. 2015) ("[i]n pari delicto bars claims against third parties, but does not apply to corporate insiders"); *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 739 n.11 (D.N.J. 2013) (*in pari delicto* "is inapplicable to claims by or on behalf of the corporation against insiders for damages caused by their misconduct as corporate insiders"); *Amcast Indus. Corp. v. Baker (In re Amcast Indus. Corp.)*, 365 B.R. 91, 124 (Bankr. S.D. Ohio 2007) (*in pari delicto* "does not apply to bar claims against corporate insiders"); *Oakwood Homes Corp. v. Credit Suisse First Bos. (In re Oakwood Homes Corp.)*, 340 B.R. 510, 536 (Bankr. D. Del. 2006) ("*In pari delicto* does not provide a defense for insiders."); *Hampton Hotel Invs., L.P. v. Beeler (In re Hampton Hotel Invs., L.P.)*, 289 B.R. 563, 577 n.23 (Bankr. S.D.N.Y. 2003) ("*In pari delicto* bars claims against third parties, but does not apply to corporate insiders."); *KDI Holdings, Inc. v. Austin Fin. Servs., Inc. (In re KDI Holdings, Inc.)*, 277 B.R. 493, 518 (Bankr. S.D.N.Y.1999) ("*in pari delicto* . . . is inapplicable where a cause of action is brought against an insider"); *Walnut Leasing Co. v. Shapiro (In re Walnut Leasing Co.)*, 1999 WL 729267, at *5 (E.D. Pa. Sept. 8, 1999) ("[*I*]*n pari delicto* will not preclude the claims against corporate insiders. Vis-a-vis their corporations, insiders cannot avoid the consequences of their own handiwork.").

[4] *In re Platinum-Beechwood Litig.*, 2019 WL 2569653, at *7 (S.D.N.Y. June 21, 2019) ("it would be absurd to allow a wrongdoing insider to rely on the imputation of his own conduct to the corporation as a defense").

[5] *HealthSouth*, 845 A.2d at 1107-08 (rejecting CEO's attempt to assert *in pari delicto* against company despite claim he did not participate in fraud because "[i]t was [CEO's] duty to ensure the filing of accurate financial statements" and "[h]aving failed to do so (for whatever reason) and having materially benefited from that failure . . ., [he] cannot wield the doctrine of *in pari delicto* to escape liability," and stating "[t]he reality that [the company] itself might be liable to third-parties due to the failure of its managers (under [the CEO's] supervision) . . . does not mean that [the company] has no right to seek recompense from those managers for the harm they caused it").

In fact, one of the very cases that Chu cites directly rejected application of *in pari delicto* in this situation, stating in language that Chu simply ignores:

> Insiders fail to cite any authority supporting the proposition that *in pari delicto* bars a Trustee from asserting claims against Insiders for their wrongful conduct because of the same wrongful conduct. The Trustee is not asserting claims against third-parties for injuries arising from Insiders' wrongful conduct. The Trustee is asserting claims against the very Insiders for their own wrongful conduct. ***No case, logic, or equitable proposition supports the conclusion that insiders of a bankrupt corporation can insulate themselves from liability by virtue of the illegal character of their conduct.*** Granting Insiders relief based on *in pari delicto* would directly oppose *in pari delicto*'s purpose of denying assistance to wrongdoers.

*Today's Destiny*, 388 B.R. 749 (emphasis added) (cited MTD at 5). The same reasoning applies here and requires the Court to reject Chu's attempt to invoke *in pari delicto* against the Trustee based on his own wrongdoing.

### B. Even If the *In Pari Delicto* Defense Could Be Available to An Insider Like Chu, It Would Not Apply Here Under the Adverse Interest Exception

Even if Chu were to provide some basis for extending *in pari delicto* to claims asserted against a corporate insider, the Court should still deny his motion to dismiss because the facts pleaded in the Complaint are sufficient to invoke the adverse interest exception to that doctrine.

Although the knowledge of corporate officers is generally imputed to a corporation for *in pari delicto* and other agency purposes, "[t]he imputation of knowledge of a corporate representative or agent to a corporation is not absolute" and "under Texas law . . . that rule loses its applicability when the agent is acting fraudulently toward his principal." *Sunpoint Sec., Inc. v. Fuller (In re Sunpoint Sec., Inc.)*, 377 B.R. 513, 563 (Bankr. E.D. Tex. 2007). Indeed, "[u]nder Texas law, an agent's 'serious criminal activity' is almost never taken within the scope of authority granted by the principal." *Ross v. Marshall*, 426 F.3d 745, 764 (5th Cir. 2005). Thus, under the "'adverse interest' exception to the imputation rule," "[i]f the agent is acting adversely to the corporation, the corporation may not be bound by the agent's activity or knowledge." *Sunpoint*,

9

377 B.R. at 563; *see also id.* at 564 ("In Texas, whether an employee's fraud is imputed to the corporation depends upon whether the fraud was on behalf of the corporation or against it.").

The adverse interest exception plainly applies here, where the Complaint alleges that: Chu engaged in serious criminal activity at the Company, Compl. ¶ 11; did so to extract unjustified compensation from the Company to fund his lavish lifestyle and so he could continue using corporate funds for his personal benefit, *id.* ¶ 2; concealed his wrongdoing from the Company, *id.*; and the Company became massively overleveraged and ultimately filed bankruptcy as a result, *id.* ¶ 1. In an apparent attempt to avoid this obvious application of the adverse interest exception, Chu repeatedly asserts that the "alleged fraud actually benefited the Company by providing it with capital from [its] lenders and investors that allowed the Company to survive and grow." MTD at 1. But these types of purported "benefits" have been routinely rejected as insufficient to defeat the adverse interest exception. *See, e.g., CBI Holding Co. v. Ernst & Young (In re CBI Holding Co.),* 529 F.3d 432, 452-53 (2d Cir. 2008) (affirming application of adverse interest exception despite argument that creation of fictitious inventory "increase[d] the amount of inventory available as collateral for [debtor's] bank loans" because "the 'benefit' provided by 'further indebtedness'— capital—'may provide an illusory financial cushion that lulls shareholders into postponing the decision to dissolve the corporation' and thus miss an opportunity to cut their losses").[6]

---

[6] *See also Vendsouth, Inc. v. Arth (In re Vendsouth, Inc.),* 2003 WL 22399581, at *15 (Bankr. M.D.N.C. Oct. 10, 2003) ("A scheme by management to drive a company into greater debt and toward its ultimate financial ruin is not for the benefit of the corporation and tends to show that management's interests were not aligned with that of the company. . . . One inference that can be drawn from the evidence is that [debtor] did not benefit from its continued existence; rather only [debtor's] officers benefitted from its continued existence beyond the point of insolvency."); *Invs. Funding Corp. of N.Y. Sec. Litig.v. Dansker (In re Invs. Funding Corp. of N.Y. Sec. Litig.),* 523 F. Supp. 533, 541 (S.D.N.Y. 1980) (rejecting argument fraud "did benefit [the company] by fraudulently obtaining for [it] huge quantities of funds from creditors and debenture holders" because "[t]he thrust of the complaint is that the [executives] created the false appearance of fiscal salubrity to conceal their past acts of mismanagement, and to raise capital for their further plundering" particularly where "it is manifest that the prolonged artificial solvency of [the company] benefited only the [executives] and their confederates, not [the company]" itself).

In fact, the circumstances here are nearly identical to those in *Felt Manufacturing Co. v. Foss (In re Felt Manufacturing Co.)*, 371 B.R. 589, 609-10 (Bankr. D.N.H. 2007), where the court rejected substantially similar arguments. *Felt* involved claims brought by a creditors' committee against the officers and directors of a company that misled lenders by falsifying financial information. *See* 371 B.R. at 609-10. Those defendants argued (as Chu does here) that "the *in pari delicto* defense applie[d] because the [asserted] claims [we]re based upon allegedly fraudulent statements and representations to [the company's] lender" by company employees, and the adverse interest exception did not apply "since [the company] received the benefit of any such fraud in the form of loan advances." *Id.* at 609. The court, however, rejected those arguments in light of the complaint's allegations that the defendants used the illegally obtained money to "pay excessive salaries and bonuses" and "to pay for personal expenses of [themselves] and their families," concluding that these allegations "suggest that the acts and omissions of the [] Defendants were motivated not solely to benefit [the company], but also to benefit various insiders of [the company], including the [] Defendants, their relatives and affiliated business entities." *Id.* at 609-10. The *Felt* court thus concluded that "the *in pari delicto* defense is not a bar to the Committee's pursuit of . . . claims against the former officers and directors of [the company]" because "when wrongful acts are committed against a corporation by its officers and directors, the wrongful nature of such acts is not imputed to the corporation." *Id.* at 610. That logic applies with equal force here.

### C. If the Court Does Not Deny the Motion to Dismiss on *In Pari Delicto* Grounds for the Reasons Discussed Above, It Should Still Reject the Affirmative Defense as Premature at the Motion-to-Dismiss Stage

The Court can also independently deny Chu's motion to dismiss on *in pari delicto* grounds because – in the absence of the threshold legal barriers discussed above – *in pari delicto* requires a fact-intensive analysis that is improper at this stage.

Under Texas law, the *in pari delicto* affirmative defense "is not an automatic bar" to liability. *Today's Destiny*, 388 B.R. at 749. This is so because "[t]he rule is adopted, not for the benefit of either party and not to punish either of them, but for the benefit of the public." *Lewis v. Davis*, 199 S.W.2d 146, 151 (Tex. 1947). As such, the defense can be rejected "even when parties are *in pari delicto*" where "public policy demands it." *Today's Destiny*, 388 B.R. at 748. This analysis of whether "granting or withholding relief" will "better serve public policy" "depends upon the peculiar facts and the equities of the case," including "whether the policy against assisting a wrongdoer outweighs the policy against permitting unjust enrichment of one party at the expense of the other." *Lewis*, 199 S.W.2d at 151. As a result, Texas courts have routinely held that the *in pari delicto* defense is too fact-intensive to resolve on a motion to dismiss, including in the very cases cited by Chu. *See, e.g.*, *Chris Pettit & Assocs., P.C. v. Tex. Partners Bank (In re Chris Pettit & Assoc., P.C.)*, 670 B.R. 602, 624 (Bankr. W.D. Tex. 2025) (cited MTD at 5) (the "policy analysis" required by *in pari delicto* "cannot be undertaken based on the 12(b)(6) motion provided to this Court" and stating "[m]ost other Texas bankruptcy courts generally find *in pari delicto* to not be a proper basis for a 12(b)(6) motion").[7] Moreover, these decisions have also recognized that it would be particularly inappropriate to accept the *in pari delicto* defense at an early stage where (as here) it is being invoked "against a Trustee who seeks recovery for the benefit of creditors of a wrongdoer rather than the wrongdoer himself." *Today's Destiny*, 388 B.R. at 749; *see also In re*

---

[7] *See also Today's Destiny*, 388 B.R. at 749 (cited MTD at 5) (*in pari delicto* requires a "policy analysis [that] can not be undertaken prior to discovery and an evidentiary hearing"); *accord Vantage Benefits Admins., Inc v. matrix Tr. Co. (In re Vantage Benefits Admins., Inc.)*, 2021 WL 1815065, at *15 (Bankr. N.D. Tex. May 5, 2021) ("the applicability of the defense necessitates an intensely factual inquiry and, thus, is not a proper subject for a Rule 12(b)(6) motion"); *Reagor-Dykes Motors, LP, v. Firstcapital Bank of Tex, N.A. (In re Reagor-Dykes Motors, LP)*, 2020 WL 4939180, at *13 (Bankr. N.D. Tex. Aug. 24, 2020) ("as defined in Texas courts, the applicability of *in pari delicto* in any specific circumstance depends on the facts and circumstances and considerations of public policy" and "[t]hese facts cannot be decided on a motion to dismiss"); *Osherow v. York*, 2019 WL 6048017, at *6 (Bankr. W.D. Tex. Aug. 5, 2019) ("courts must consider how the facts and equities of the individual case interact with the policy *in pari delicto* was designed to serve," which is an analysis that "cannot be undertaken prior to discovery").

*Am. Hous. Found.*, 2011 WL 4625349, at *32 (Bankr. N.D. Tex. Sept. 30, 2011) (declining to

impose *in pari delicto* defense against trustee after trial because "[t]he Trustee, though he stands

in the shoes of the debtor, is not representing the interests of [the debtor], but rather, the collection

of creditors who currently possess claims against [the debtor]"). And, as discussed above, those

policy concerns are further elevated here because the defense is being advanced by a corporate

insider who directed the underlying wrongdoing and used his position to enrich himself at the

Company's expense.

Chu does not acknowledge that Texas law requires an assessment of the "peculiar facts and

equities of the case" before accepting an *in pari delicto* affirmative defense, let alone establish

beyond doubt that the Trustee can prove no set of facts that would overcome that defense, as

required. *Jeanty*, 72 F.4th at 119. His motion to dismiss on this ground must therefore be denied.

### D. Chu Does Not Establish That *In Pari Delicto* Applies to All of the Claims Asserted in the Complaint

Finally, Chu's motion to dismiss on *in pari delicto* grounds also must be rejected with

respect to almost all of the claims in the Complaint because Chu makes no effort to explain why

each specific claim raised here is subject to *in pari delicto*, and only vaguely contends that "the

Trustee's fraud and other claims are barred by the doctrine of *in pari delicto*." MTD at 4.

"The Supreme Court has ruled that when analyzing an *in pari delicto* defense against a

statutory claim, a court must consider whether allowing the defense emasculates the statute's

purpose." *Am. Hous.*, 2011 WL 4625349, at *32. Applying this authority, courts have regularly

held that avoidance and preference claims under Sections 544, 547, and 548 – like those asserted

here – are not subject to *in pari delicto* because applying the doctrine would "dilute[] the purpose

and force of the statute." *Id.* at *32-33 ("public policy precludes [defendant's] assertion of the

defense" to a Section 548 claim because allowing the defense would "degenerate[] the Bankruptcy

Code and principles of equity").[8] Courts have likewise declined to apply *in pari delicto* to the other non-fraud common law claims asserted here. *See, e.g.*, *Felt*, 371 B.R. at 610 (declining to apply *in pari delicto* to fiduciary duty claim because "[i]f a defendant breaches a fiduciary duty owed to a plaintiff, the defendant's alleged wrongful conduct is not imputed to the plaintiff"); *In re Olympia Brewing Co. Sec. Litig.*, 1985 WL 3928, at *3 (N.D. Ill. Nov. 13, 1985) (holding that "the defense of *in pari delicto* . . . has no application to a breach of contract claim in the absence of evidence that the contract itself was an agreement to do something wrongful").

Chu makes no attempt to explain why the *in pari delicto* doctrine should be applied to each of the non-fraud claims asserted in the Complaint, even though (as an affirmative defense) it is his burden to do so. *Goodman*, 2025 WL 73072, at *12. Accordingly, his motion to dismiss those claims on *in pari delicto* grounds must be denied for this additional reason.

## II.   THE COMPLAINT'S FRAUD CLAIMS (COUNTS I, VIII, XI) ARE ADEQUATELY PLEADED

Chu advances two misguided arguments against the Trustee's fraud claims: (1) that the Trustee fails to plead reliance and causation because the identified misstatements were supposedly "directed to third parties, not to Tricolor," MTD at 7-9; and (2) that the Trustee "fail[s] to plead fraud with the requisite particularity" because she purportedly does not "describ[e] what Mr. Chu's own misrepresentations allegedly were" and "fail[s] to identify the details of any alleged misrepresentations that are relevant to the fraud claim," MTD at 9-13. Both arguments rely on a fundamental misreading of the fraud claims asserted against Chu in the Complaint and can be easily rejected when those claims are properly construed.

---

[8] *See also Fordu v. Fordu (In re Fordu)*, 209 B.R. 854, 863 (B.A.P. 6th Cir. BAP 1997) ("courts have consistently recognized that the Trustee may pursue fraudulent or preferential transfers despite the fact that the debtor was a knowing and willing participant to such conveyances"); *Kipperman v. Onex Corp.*, 411 B.R. 805, 880 (N.D. Ga. 2009) ("*in pari delicto* may not be used against the trustee to bar fraudulent transfer and preference actions").

In particular, the fraud claims against Chu are not based on statements to "Tricolor's lenders and asset-backed securities investors" about "the borrowing base" and "fake loans," as Chu contends, MTD at 6-7, but rather concern misstatements and omissions that Chu (and his co-conspirators) made to the Company itself about that underlying wrongdoing – which allowed Chu to extract unjustified compensation and the wrongdoing to continue until it forced the Company into bankruptcy – as well as Chu's misstatements and omissions to the Company concerning his extensive use of corporate funds for personal expenses. Compl. ¶¶ 145-59. These specific misstatements and omissions include: (1) "present[ations] regarding [the] financial position of the company, including investments, hiring, and macroeconomic conditions" by Chu at "virtually every Tricolor Board meeting," *id.* ¶ 51, which reflected the fake loans on the Company's books that were created at Chu's direction, *id.* ¶¶ 147, 153, and did not disclose Chu's underlying wrongdoing;[9] (2) "materials for the Board concerning Tricolor's securitizations to financial institutions" that were developed by Chu, *id.* ¶ 52, which likewise did not mention that those securitizations were backed by fake loans; (3) "falsif[ied] backup records" created at Chu's direction "to keep when audits were performed" in 2021, 2022, and 2023, which were given to auditors hired by the Company so that they would not detect the underlying wrongdoing on behalf of the Company, *id.* ¶ 63; (4) Chu's repeated demands for increased compensation and bonuses,

---

[9] Chu wrongly claims that these presentations are not actionable because "there is nothing intrinsically suspicious about a CEO . . . presenting financial information to a corporate board, and the Complaint does not allege that any of that information was knowingly false or misleading." MTD at 8. Of course, the Complaint does allege that the financial information was false since it reflected the fake loans created by Chu, but even if not it is well-settled that accurate financial information can be misleading where (as here) a defendant attributes the results to their business acumen without disclosing that they are actually the result of criminal conduct. *See Mart v. Tactile Sys. Tech., Inc.*, 595 F. Supp. 3d 788, 810-11 (D. Minn. 2022) ("a duty to disclose can arise when a [speaker] puts the reasons for its success at issue, but fails to disclose that a material source of its success is the use of . . . illegal business practices"); *In re CBL & Assocs. Props., Inc. Sec. Litig.*, 2022 WL 1405415, at *10 (E.D. Tenn. May 3, 2022) ("[a] statement regarding financial performance, even when accurate, is still misleading . . . if the speaker . . . reports growth and revenue that came not from its business practices but from a fraudulent scheme"); *In re Providian Fin. Corp. Sec. Litig.*, 152 F. Supp. 2d 814, 824-25 (E.D. Pa. 2001) (statement attributing financial success to "customer-focused approach" was fraudulent where illegal business practices were the hidden cause).

including in a specifically identified "fourteen-slide presentation for the Board meeting on March 17, 2023" and in "a new proposal" presented to the Board on January 24, 2025, which misleadingly touted his purported financial success without disclosing it was caused by his underlying wrongdoing, *id.* ¶¶ 93-94, 97-99, 101, 112, 114; and (5) Chu's misstatements to the Company in May 2023 that his millions of dollars' worth of personal purchases on his Company American Express cards were "completely business-driven" and necessary business expenses even though many were for his personal benefit, *id.* ¶¶ 102-03, 105, while omitting that those personal purchases occurred both before and after the single year investigated by the Company, *id.* ¶ 121. And, of course, as the Company's CEO at all relevant times, *id.* ¶ 47, Chu had an affirmative obligation to disclose his underlying wrongdoing, meaning that he committed actionable omissions throughout the relevant period. *See Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 22 (Tex. Ct. App. 2000) ("A fiduciary has much more than the traditional obligation not to make any material misrepresentations; he has an affirmative duty to make a full and accurate confession of all his fiduciary activities, transactions, profits, and mistakes. The breach of the duty of full disclosure by a fiduciary is tantamount to fraudulent concealment.").

These misstatements and omissions by Chu are identified in the Complaint with adequate particularity under Rule 9(b), which this Court has recognized only "requires the complaint to set forth the who, what, when, where, and how of the events at issue." *Goodman*, 2025 WL 73072, at *2. Indeed, courts have routinely sustained substantially similar allegations of fraud at the motion-to-dismiss stage. *See, e.g.*, *N. Tex. Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*, 107 F. Supp. 3d 620, 633 (N.D. Tex. 2015) (denying motion to dismiss fraud by nondisclosure claim for lack of particularity where complaint alleged "that the Defendants . . . should have disclosed [the underlying issue] through the Board meetings, the Board reports, and the November 2007

16

Board presentation created by [them]" because "[t]hese allegations sufficiently 'plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading'").

The Complaint likewise adequately pleads that the Company relied on these misstatements and omissions when it: (1) decided to "issue further asset-backed securities" and incur additional indebtedness to the point of "overleverage[]," Compl. ¶¶ 154, 156; (2) agreed to "pa[y] Chu a bonus of $15 million in 2025 and a lavish compensation package as a reward for contributing to (what appeared to be) several years of resounding success at Tricolor which was based on the fabricated loans," *id.* ¶ 155; (3) agreed to resolve its investigation into Chu's 2022 personal expenses on favorable terms and subsequently forgive those expenses entirely, *id.* ¶¶ 107, 113, 115;[10] and (4) failed to take any action with respect to Chu's personal expenses in other years, *id.* ¶ 121. And the Complaint further sufficiently pleads that the fraud caused the Company to suffer losses when it deceived the Company into continuing with business activities that drove it into bankruptcy, induced the Company into paying Chu unjustified compensation, and led the Company to continue paying for Chu's personal expenses. *Id.* ¶¶ 107, 113, 115, 155-58.

Significantly, "Rule 9(b) does not reflect a subscription to fact pleading and requires only simple, concise, and direct allegations of the circumstances constituting fraud." *Megatel Homes, LLC v. Moayedi*, 2022 WL 2306949, at *6 (N.D. Tex. June 27, 2022). Moreover, "it has been widely held that where the fraud allegedly was complex and occurred over a period of time, the requirements of Rule 9(b) are less stringently applied" and "do[] not require plaintiffs . . . to list

---

[10] Chu's assertion that the Company suffered "*no* injury as a result" of his personal expenses during 2022 because "the Company ask[ed] Mr. Chu to repay some of those expenses, and Mr. Chu d[id] so," MTD at 9 (emphasis in original), improperly disputes the facts in the Complaint and wrongly asks the Court to draw inferences in Chu's favor. The actual facts pleaded in the Complaint are that Chu strong-armed the Company into a favorable settlement regarding those expenses and then coerced the Company into forgiving that settlement amount based on Chu's misstatements that the expenses were actually business expenses, as well as his failure to disclose his underlying wrongdoing.

every false claim, its dates, and the individuals responsible." *U.S. Commodity Futures Trading Comm'n v. M25 Invs. Inc.*, 2010 WL 769367, at *2 (N.D. Tex. Mar. 6, 2010).[11] At bottom, "[t]he court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs." *SEC v. Verges*, 716 F. Supp. 3d 456, 465 (N.D. Tex. 2024). The allegations described above are more than sufficient under these standards, and the concerns animating Rule 9(b) are clearly satisfied here. As a result, Chu's motion to dismiss the Complaint's fraud claims on this ground should be denied.

### III.    CHU'S HODGEPODGE OF ADDITIONAL ARGUMENTS AGAINST CERTAIN OTHER CLAIMS SHOULD BE REJECTED

Other than his unsupported invocation of *in pari delicto*, Chu makes no arguments against many of the non-fraud claims in the Complaint, including the claims for breach of contract (Count IV), preference (Count VII), constructive fraudulent transfer (Count IX), and constructive trust (Count XII). As such, these claims cannot be dismissed. In any event, the limited dismissal arguments that Chu makes with respect to the other non-fraud claims must also be rejected.

#### A.  The Breach of Fiduciary Duty, Breach of the Implied Covenant, And Unjust Enrichment Claims Should Not Be Dismissed Based on the Contract Claim

Chu's repetitive arguments that certain counts in the Complaint – breach of fiduciary duty, breach of the implied covenant, and unjust enrichment – should be dismissed because the Complaint also pleads a breach of contract claim, MTD at 13-18, 21-22, fail.

As an initial matter, federal courts facing similar arguments have routinely declined to dismiss these claims because the Federal Rules expressly permit pleading in the alternative. *See In*

---

[11] Similarly, courts have held that "Rule 9(b) does not require that a specific date and time always be alleged" when that timing can "be inferred from the whole of a plaintiff's complaint." *OurLink, LLC v. Goldberg*, 2008 WL 11425698, at *7 (N.D. Tex. Dec. 3, 2008). Thus, Chu's quibble that the Complaint does not provide a date for one misleading Board presentation concerning a securitization, MTD at 8-9, fails given the broader context that all of the Company's securitizations took place during the fraud that Chu perpetrated from 2018 through 2025. Compl. ¶ 54.

*re UD Dissolution Corp.*, 629 B.R. 11, 35 (Bankr. D. Del. 2021) (declining to dismiss fiduciary

duty claim as duplicative of contract claim because, "[e]ven if they are duplicative, [] Rule 8(d)

allows alternative pleading"); *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp.

2d 680, 704 n.5 (S.D. Tex. 2011) ("unjust enrichment . . . claims [] may be stated in the alternative

to a breach of contract claim"); *Nortel Networks, Inc. v. Commc'n Test Design (In re Nortel*

*Networks, Inc.)*, 2011 WL 1102829, at *10 (Bankr. D. Del. 2011) (declining to dismiss implied

covenant claim based on "express contractual provisions" where implied covenant claim was

asserted "as an alternative claim because of [defendant's] contention that the contracts permitted

it to take the actions it did"). Although this basic point is sufficient to deny dismissal, Chu's

arguments about each of the claims also fail on the merits.

**Breach of Fiduciary Duty (Counts II, III).** The law of Delaware – where the Company

was formed, MTD at 14 n.5 – is clear that "a fiduciary can face both a claim for breach of contract

and a claim for breach of fiduciary duty." *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 858

(Del. Ch. 2022) (stating contract claim should only preempt fiduciary duty claim where the

contract is "the sole source of the specific prohibition," but that fiduciary duty claim could survive

where "the plaintiff could bring an independent cause of action for breach of fiduciary duty if the

parties had not signed a contract"). For example, Delaware courts have permitted breach of

fiduciary duty claims to survive "[w]here a fiduciary duty of loyalty is expressly written into an

agreement." *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 582 (Del. Ch. 1998). Delaware

courts have also held that "[c]onduct by an entity that occupies a fiduciary position . . . may form

the basis of both a contract and a breach of fiduciary duty claim" where the relevant contract "does

not modify or preempt the fiduciary duties owed" by the defendant and instead merely incorporates

background fiduciary duty principles. *RJ Assocs., Inc. v. Health Payors' Org. Ltd. P'ship, HPA,*

*Inc.*, 1999 WL 550350, at \*10 (Del. Ch. July 16, 1999). That is the case here, where the relevant LLC agreement merely reflects that officer board members (like Chu) "shall owe fiduciary duties to the Company . . . of the same kind and to the same extent" as officers in corporations, Compl. Ex. 3, § 11.3(a), which also would have been the case in the absence of such a provision. *See Phillips v. Hove*, 2011 WL 4404034, at \*24 (Del. Ch. Sep. 22, 2011) ("Unless limited or eliminated in the entity's operating agreement, the member-managers of a Delaware limited liability compan[y] owe traditional fiduciary duties to the LLC and its members.").[12]

The same is also true under Texas law. *See Fidelity & Deposit Co. of Md. v. Com. Cas. Consultants, Inc.*, 976 F.2d 272, 276 (5th Cir. 1992) (rejecting argument fiduciary duty claim could not be asserted based on "violat[ion of] a contractual obligation" because "if the contract creates a special relationship imposing a duty, breach of that duty may give rise to an independent tort action"). Indeed, the very cases cited by Chu recognize that "[t]he acts of a party may breach duties in tort or contract alone or simultaneously in both," *L. B. Benon Family Limited Partnership v. Wells Fargo Bank, N.A.*, 2022 WL 16825204, at \*6 (W.D. Tex. Nov. 7, 2022) (cited MTD at 14-16), and non-contractual claims can be brought where (as here) a duty existed outside of the contract. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (cited MTD at 14) ("If the defendant's conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort."). Courts have likewise declined to apply the economic loss rule cited by Chu, MTD at 14-15, where (as here) the fiduciary duties are not merely a creature of the contract. *See U.S. Risk LLC v. Chubb Glob. Mkts. Syndicate 2488*,

---

[12] The Delaware cases cited by Chu involved situations where the relevant duties or rights were created or replaced by the contract, and are therefore inapposite here. *See Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) (cited MTD at 14) (agreement "created contract duties that superseded and negated any distinct fiduciary duties arising out of the same conduct"); *Stewart v. BF Bolthouse Holdco, LLC*, 2013 WL 5210220, at \*13 (Del. Ch. Aug. 30, 2013) (cited MTD at 14, 16) (exercised right was "solely a creature of contract").

2023 WL 348998, at *11 (N.D. Tex. Jan. 19, 2023) (declining to apply economic loss rule where fiduciary relationship was "created by both the common law and the parties' agreement" and stating "[a]lthough the [contract] sets [forth] certain [ ] fiduciary duties, . . . had the [contract] not existed . . . [defendant] would still have owed fiduciary duties to [plaintiff]").

**_Breach of the Implied Covenant (Count V)._** Chu contends that the implied covenant claim should be dismissed because "the terms of the contract already address the alleged misconduct" and there is purportedly "no gap in the contract for which an implied term needs to be introduced." MTD at 16. But this argument fails because it improperly seeks to resolve factual disputes in Chu's favor and draw inferences against the Trustee. _See Russell v. Rich_, 2025 WL 2816793, at *4 (N.D. Tex. June 2, 2025) ("The Court, in considering a motion to dismiss, cannot make disputed fact determinations and 'must indulge all inferences in favor of the party asserting a cause of action.'"). Indeed, Chu's motion itself demonstrates at least one "gap" that the implied covenant must fill, by asserting that Chu validly obtained his outsized compensation "by threatening to . . . exercise his shareholder's rights" and "us[ing] the powers granted to him under the Company's LLC Agreement to remove Board members with whom he allegedly disagreed." MTD at 10. Chu's contention that using these strong-arm tactics were permissible under the contract underscores the need to resolve whether he exercised those "rights" and "powers" in a way that comported with the implied covenant. _See, e.g._, _Gerber v. Enter. Prods. Holdings, LLC_, 67 A.3d 400, 419 (Del. 2013) ("[w]hen exercising a discretionary right, a party to the contract must exercise its discretion reasonably" and "refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of its bargain").[13]

---

[13] _See also Johnson & Johnson v. Fortis Advisors LLC_, __ A.3d __, 2026 WL 89452, at *16 & n.114, n.116 (Del. Jan. 12, 2026) (when a party with discretionary authority under a contract "exploits that discretion in a manner that defeats the overarching purpose of the bargain, courts may imply a requirement that such discretion be exercised reasonably and in good faith" because the contractual grant of discretion "was implicitly conditioned on sincerity, honesty, fair

***Unjust Enrichment (Count XI).*** Chu's argument that the unjust enrichment claim is "already the subject of the Trustee's contract claim," MTD at 21-22, relies entirely on his overly narrow reading of the unjust enrichment claim as being limited to Chu's "one-time special bonus of $15,000,000," which he asserts was "made possible 'pursuant to the LLC Agreement,' which gave Mr. Chu the 'unfettered ability to shape the Board.'" *Id.* at 21. However, even if one were to improperly draw the inference in Chu's favor that his self-interested exercise of that "ability" did not result in unjust enrichment, the unjust enrichment claim is not confined to that single bonus payment, and instead includes all of the "direct, concrete economic benefits" identified in the Complaint, Compl. ¶ 248, including Chu's improper use of corporate funds to pay for "private jet travel [and] expensive European vacations," *id.* ¶ 2, as well as his regular use of Company American Express cards for personal purchases, *id.* ¶¶ 102, 121. Chu makes no argument that all of these unjust benefits were "authorized under and paid pursuant to an existing contract," MTD at 22, and therefore fails to establish that the unjust enrichment claim should be dismissed.

### B. Chu's Arguments About the Turnover, Civil Conspiracy, Constructive Trust, and Accounting Claims Should Be Rejected

Chu's additional minor arguments about the turnover, civil conspiracy, constructive trust, and accounting claims, MTD at 18-21, 22-25, likewise fail.

***Turnover (Count VI).*** Chu asserts that the turnover claim should be dismissed because "there is still a live dispute as to whether a party is holding property of the estate." MTD at 20. However, courts have held that a defendant "cannot resist section 542(b) by manufacturing a dispute where there in fact is none," *Legal Xtranet v. AT & T Mgmt. Servs. (In re Legal Xtranet)*, 2011 WL 3236053, *1 n.1 (Bankr. W.D. Tex. July 26, 2011), and here it is not clear how Chu

---

dealing and good faith") (cleaned up); *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 444 (Del. 2005) ("the implied covenant of good faith . . . requires more than just literal compliance with the [contract] provisions," it "requires that the [party] act in a way that honors the [counterparty's] reasonable expectations").

could possibly claim that he is entitled to keep a $15 million bonus for his work at a company where he admits the CFO "has now pleaded guilty" to committing rampant fraud on his watch. MTD at 1. Regardless, in addition to Chu's compensation and the properties he purchased with it, the Complaint's turnover claim also encompasses Chu's use of corporate funds for personal purchases, such as his purchase of a $600 Oura ring using his corporate credit card in August 2025. Compl. ¶ 121. Chu cannot raise a serious dispute about whether those purchases belong to the Company, and therefore his arguments for dismissing the turnover claim must be rejected.

*Civil Conspiracy (Count X).* Chu's sole argument about the conspiracy claim is that it "necessarily falls" based on his view that the underlying fraud claim is insufficiently pleaded. MTD at 20-21. However, as discussed above, the Complaint states a valid fraud claim, and Chu therefore presents no basis to dismiss the conspiracy claim. Moreover, even if the Court finds the underlying fraud claim insufficient with respect to Chu, the conspiracy claim could still survive if the fraud claim is adequately pleaded with respect to any of Chu's co-conspirators. *See Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (conspiracy claim exists to provide "grounds for recovery against co-conspirators who did not commit the underlying unlawful act").

*Constructive Trust (Count XII).* Chu contends that the constructive trust claim should be dismissed because under Texas law "constructive trust is not a cause of action, it is a remedy." MTD at 22-23. However, courts in Delaware – where the Company was formed and whose laws govern its LLC agreement, MTD at 14 n.5 – generally decline to dismiss claims on this ground. *See VTB Bank v. Navitron Projects Corp.*, 2014 WL 1691250, at *6 (Del. Ch. Apr. 28, 2014) ("In these situations, this Court has tended to permit the remedial claims to remain in the complaint, but it has generally excluded them from its analysis at the motion to dismiss stage. In effect, this

Court treats remedial claims not as independent causes of action but instead as having been included in the prayer for relief."). Thus, there is no reason to dismiss the constructive trust claim.

   ***Accounting (Count XIII).*** Chu argues that the accounting claim should be dismissed because Texas law limits such claims to circumstances where "the facts and accounts presented are so complex that adequate relief may not be obtained at law." MTD at 23. This argument might have more force if the first sentence of Chu's brief did not read "[t]he Complaint in this case tells a story of a **complex** financial fraud." *Id.* at 1 (emphasis added). Regardless, the Complaint adequately details the complexity of the wrongdoing here, including that: it spanned almost a decade and involved hundreds of millions of dollars of fraudulent loans, Compl. ¶¶ 10, 54; the Trustee has had to retain "an industry-leading investment banking and financial advisory firm . . . to conduct a forensic accounting and fraud investigation," which remains ongoing despite months of work, *id.* ¶¶ 75-76; Chu made millions of dollars' worth of personal purchases on Company credit cards, requiring analysis of countless individual entries on credit card statements, *id.* ¶¶ 102, 121; and the Trustee's months-long investigation is ongoing because she has access to more than two terabytes of data, *id.* ¶ 144. Chu's assertion that these allegations do not plead a sufficiently complex fraud therefore amounts to little more than a factual dispute that cannot be resolved on a motion to dismiss. *See Russell*, 2025 WL 2816793, at *4. In any event, the supposed "complexity" required for accounting claims under Texas law does not apply under longstanding Delaware law – which governs the Company's LLC agreement, MTD at 14 n.5 – where (as here) the claims are brought against a fiduciary. *See Pan Am. Trade & Inv. Corp. v. Commercial Metals Co.*, 94 A.2d 700, 701-02 (Del. Ch. 1953). Chu's arguments for dismissing the accounting claim therefore fail.

## IV.   ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE

   For the reasons discussed above, Chu's motion to dismiss should be denied in its entirety. Nonetheless, should the Court grant any portion of the motion to dismiss, it should do so without

prejudice and grant the Trustee leave to amend the Complaint. Under controlling Fifth Circuit law, the Federal Rules "evince[] a bias in favor of granting leave to amend," *Stripling v. Jordan Production Co.*, 234 F.3d 863, 872 (5th Cir. 2000), and "[t]here is a strong presumption in favor of granting leave to amend." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. Of Internal Med.*, 103 F.4th 383, 394 (5th Cir. 2024). Indeed, an opportunity to amend is routinely provided where (as here) the plaintiff has not previously amended. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case"). And leave to amend would also be particularly appropriate if any dismissal is based on a failure to satisfy Rule 9(b). *See Stringer v. Remington Arms Co.*, 52 F.4th 660, 663 (5th Cir. 2022) ("[D]ismissal for failure to comply with Rule 9(b) is almost always with leave to amend.").

In particular, should the Court deem it necessary, the Trustee would be prepared to amend the Complaint with additional allegations based on her continuing investigation of Chu's extensive wrongdoing, including identifying additional instances when Chu made statements to the Company about its finances and demanding additional compensation without disclosing his rampant fraud, as well as providing additional details about Chu's decade-long use of credit cards paid by the Company to make personal purchases of over $15 million.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court deny Chu's Motion to Dismiss.

Dated: New York, New York
      March 10, 2026

**MCDERMOTT WILL & SCHULTE LLP**

   */s/ Julia M. Beskin*          

| | |
|---|---|
| Charles R. Gibbs (TX Bar No. 7846300) | Darren Azman (admitted *pro hac vice*) |
| Marcus A. Helt (TX Bar No. 24052187) | Jared M. Gerber (admitted *pro hac vice*) |
| Grayson Williams (TX Bar No. 24124561) | Timothy C. Cramton (admitted *pro hac vice*) |
| **MCDERMOTT WILL & SCHULTE LLP** | **MCDERMOTT WILL & SCHULTE LLP** |
| 2801 North Harwood Street | One Vanderbilt Avenue |
| Suite 2600 | New York, New York 10017-3852 |
| Dallas, Texas 75201 | Telephone: (212)547-5400 |
| Telephone: (214) 295-8000 | E-mail: dazman@mcdermottlaw.com |
| E-mail: crgibbs@mcdermottlaw.com |       jmgerber@mcdermottlaw.com |
|       mhelt@mcdermottlaw.com |       tcramton@mcdermottlaw.com |
|       gwilliams@mcdermottlaw.com | |

*Counsel to the Chapter 7 Trustee*

Julia M. Beskin (admitted *pro hac vice*)
**MCDERMOTT WILL & SCHULTE LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
E-mail: jbeskin@mcdermottlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on March 10, 2026, a true and correct copy of the foregoing document was served via CM/ECF for the United States Bankruptcy Court for the Northern District of Texas on counsel for all parties to this adversary proceeding.

*/s/ Julia M. Beskin*
Julia M. Beskin